In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3673

Beth B. and Susan and Tom B.,
individually and as next friends
of Beth B.,

Plaintiffs-Appellants,

v.

Mark Van Clay, individually
and in his official capacity as
superintendent, and Lake Bluff
School District # 65,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4771--James B. Moran Judge.

Argued January 17, 2002--Decided March 5, 2002

   Before Flaum, Chief Judge, and Bauer, and
Easterbrook, Circuit Judges.

   Flaum, Chief Judge.  Thirteen-year-old
Beth B. and her parents appeal the
district court's grant of summary
judgment to the Lake Bluff School
District, affirming an administrative
decision that upheld the school
district's recommendation to place Beth
in a special education classroom. Beth is
severely mentally and physically
challenged. Her parents have long been
fighting a battle to keep her in the
regular education classroom: In 1997, the
school district first recommended that
Beth continue her schooling in a special
education, or Educational Life Skills
("ELS"), program--a placement with which
her parents disagreed. When it became
clear that they and the district could
not reach a mutually satisfactory
solution, they requested a due process
hearing under sec.1415(f) of the
Individuals with Disabilities Education
Act ("IDEA," or "the Act"), 20 U.S.C.
sec.1400 et seq. The hearing commenced on
October 25, 1999; in May 2000, the
hearing officer ruled in favor of the
school district. Beth's parents sought

review in the district court and, on September 10, 2001, the court affirmed the hearing officer's conclusion, granting Lake Bluff's motion for summary judgment. Beth and her parents now appeal to us. We recognize the difficult decisions that Beth's parents face, and we appreciate the care and commitment with which they participate in their daughter's education. However, after looking to the language of the IDEA and the congressional intent behind it, we conclude that the school district's placement does not violate the Act. For the reasons stated herein, we affirm the decision of the district court.

I.  Background

Beth has Rett Syndrome, a neurological disorder that almost exclusively affects girls. It results in severe disabilities, both cognitive and physical. Beth is nonverbal; she uses an instrument called an eye gaze, a board with various pictures and symbols that she singles out with eye contact, to communicate her wants and needs, as well as other communication devices that allow her to choose among symbols or to hear messages recorded by others. She relies on a wheelchair for mobility. She, like nearly all Rett sufferers, has an extreme lack of control over body movement. Although her mental capacity is difficult to assess precisely, due to her extreme communicative and motor impairments, some experts contend that she has the cognitive ability of a twelve-to-eighteen-month old infant. Others estimate that she has the ability of a four-to-six-year old. She is unable to read or recognize numbers.

Beth has been educated in regular classrooms at her neighborhood public school for seven years. She is currently in the seventh grade at Lake Bluff Middle School with other thirteen-year-old children. Students in the seventh grade attend six 42-minute classes a day. They have three-minute passing periods between class. Beth's aides help her travel from room to room during the passing periods, although it is extremely difficult for her to do so in such a short time frame. Since the first grade, Beth has worked with a one-on-one aide at all times and has used an individualized curriculum tied in subject matter, as much as

possible, to that of the other students in the class. Beth's current curriculum is geared toward someone at a preschool level. When her peers worked on mathematics, she was exposed to various numbers. When the class studied meteorology and weather patterns, she looked at pictures of clouds. Beth cannot participate in class discussions or lectures.

The school district held an annual conference with Beth's parents, teachers, and district administrators to review Beth's individualized education program ("IEP"). After her second grade year, the school district recommended at her IEP meeting that Beth be placed in an ELS setting. No appropriate special education environment exists in the Lake Bluff District; Beth would have to attend school in a neighboring school district/1. The ELS program recommended by the district would be located in a public school building and would serve students between the ages of six and twenty one with mild, moderate, or severe handicaps. Generally, six to eight students comprise one ELS classroom, and the student-teacher ratio is one-to-one. ELS students in the program are mainstreamed into regular education classrooms during music, library, art, computer, and certain social studies and science classes, and join other students at the school during lunch, recess, assemblies, and field trips. Additionally, reverse mainstreaming is employed; that is, regular education students come into the ELS classroom to allow for interaction between ELS and non-ELS students.

Beth's parents disagreed with Beth's placement in an ELS program, requested a due process review under the IDEA, and invoked the Act's stay-put provision, which has allowed Beth to remain in the regular classroom at her neighborhood school pending the resolution of this litigation. 20 U.S.C. sec.1415(j).

II. Discussion

Beth's parents argue that the school district's placement of Beth in an ELS classroom violates the IDEA./2 The district court erred, they contend, in upholding the administrative decision finding otherwise. Although we review the school board's ultimate decision de novo

because it is a mixed question of law and fact, we will reverse only if the district court's findings were clearly erroneous, absent a mistake of law. LaGrange, 184 F.3d at 915.

## A. Deference to the Findings of the Administrative Hearing Officer

We find as an initial matter that the district court gave proper weight to the findings of the hearing officer at the administrative proceedings. Because school authorities are better suited than are federal judges to determine educational policy, the district court is required, in its independent evaluation of the evidence, to give due deference to the results of the administrative proceedings. Id. (citing Heather S. v. Wisconsin, 125 F.3d 1045 (7th Cir. 1997)). The hearing officer correctly applied the burden of proof and found that the district satisfactorily showed that its proposed IEP was adequate under the IDEA. The district was not required to prove that Beth received no educational benefit at her local school, as her parents suggest. We also find that the hearing officer did not err as a matter of law in failing to consider whether the ELS placement was the least restrictive environment;/3 he did consider whether it was the least restrictive appropriate environment, that is, whether Beth would be mainstreamed to the maximum extent appropriate--the proper question under the LRE analysis discussed below. The district court, therefore, did not err in giving deference to the administrative decision after independently evaluating the evidence and even, in this case, updating it with an evidentiary hearing.

## B. The IDEA

The IDEA, enacted in 1975 as The Education of All Handicapped Children's Act, entitles all children with disabilities to access to public education. Pub. L. No. 94-142, 89 Stat. 773 (1975). It conditions federal funding for educating disabled children on a state's compliance with certain conditions. A school district must provide such children with a free appropriate public education ("FAPE"), 20 U.S.C. sec.1412(1), together, to the maximum extent appropriate, with

nondisabled children ("least restrictive environment" or "LRE"). 20 U.S.C. sec.1412(5). The FAPE provision and LRE provision are two sides of the same IEP coin. The first requirement is absolute and focuses on the school district's proposed placement--here, the ELS program; the second is relative and concentrates on other placement options-- here, keeping Beth in the regular classroom. The LRE requirement shows Congress's strong preference in favor of mainstreaming, LaGrange, 184 F.3d at 915, but does not require, or even suggest, doing so when the regular classroom setting provides an unsatisfactory education. 34 C.F.R. sec.300.550(b)(2) ("[S]pecial classes, separate schooling or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.").

1. FAPE

We agree with the district court and the hearing officer, and find that the district's recommendation to place Beth in an ELS classroom satisfies the FAPE requirement. In determining whether the district's placement of Beth meets the standard, we must ask: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). No one contests that the program recommended during Beth's IEP review passes muster under this test; the FAPE mandate is, therefore, not at issue. Its discussion is required, however, because of the confusion that ensues when language from the FAPE requirement and analysis is misapplied to the LRE inquiry.

Beth's parents confuse the FAPE side of the coin with the LRE side. They contend that Beth's current placement satisfies the Rowley standard because she received an educational benefit at Lake Bluff Middle School. So long as the regular classroom confers "some educational benefit" to Beth, they argue, 458 U.S. at

200, the school district cannot remove her from that setting. This language is misplaced. The Rowley holding applies only to the school district's responsibility to provide a FAPE--a requirement that analyzes the appropriateness of the district's placement--not the appropriateness of the ELS alternatives, including the regular education classroom. As the district court properly noted, the FAPE determination is at the threshold of the placement inquiry. Only with the subsequent LRE analysis does the question of the educational benefit to Beth in the regular classroom arise; in that context, the Rowley language does not apply. See also Daniel R.R. v. Bd. of Educ., 874 F.2d 1036, 1045 (5th Cir. 1989); A.W. v. Northwest R-1 School Dist., 813 F.2d 158, 163 (8th Cir. 1987); Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir. 1983).

2.  LRE

The core of this dispute involves whether the school district's decision to place Beth in an ELS classroom violates the LRE provision of the IDEA. Under this clause, the district must mainstream Beth--that is, provide her an education with her nondisabled peers--to the "greatest extent appropriate." 20 U.S.C. sec.1412(5). Again, Congress used the modifier "appropriate" in stating the requirements of the Act, limiting its mainstreaming mandate. The regular class room would be a less restrictive environment than the ELS classroom. That point is not at issue, however, because the Lake Bluff school district is not required to educate Beth in such an environment unless doing so would be appropriate. The Supreme Court, although it has not yet interpreted the language of the LRE provision, has stated that "[t]he Act's use of the word 'appropriate' thus seems to reflect Congress' recognition that some settings simply are not suitable environments for the participation of some handicapped children." Rowley, 458 U.S. at 197 n. 21. This case turns, then, on whether educating Beth in the regular classroom (or, more appropriately in the middle school setting, classrooms) would be appropriate.

The relevant IDEA regulation provides that children may not be removed from the regular classroom unless their education

there, with the use of supplementary aids and services, cannot be achieved satisfactorily. 34 C.F.R. sec.300.550(b)(2). This preference for mainstreaming demands a hard look and a careful analysis of the education Beth was receiving at Lake Bluff Middle School. Beth's parents rely on misplaced language from Rowley to argue that so long as she was receiving any benefit--improvement in eye contact, or progress in responding to a request to "look" or "touch"--her removal would violate the LRE requirement. We cannot agree with this definition of satisfactory education.

Rowley requires, in its analysis of the FAPE provision, "that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." 458 U.S. at 200. The Court's rationale behind using this standard was "to leave the selection of educational policy and methods where they traditionally have resided--with state and local school officials." Daniel R.R., 874 F.2d at 1044 (citing Rowley, 458 U.S. at 207). The standard is intended to give school districts "flexibility in educational planning." Id. By applying it to the LRE directive and arguing that the school district cannot remove Beth from the regular classroom if she receives any benefit there, Beth's parents turn the "some educational benefit" language on its head. Instead of granting flexibility to educators and school officials, it places an extreme restriction on their policymaking authority and the deference they are owed; it essentially vitiates school districts' authority to place any disabled children in separate special education environments. Neither Congress nor the Supreme Court intended such a result. Rowley, 458 U.S. at 181, fn. 4 ("Congress recognized that regular classrooms simply would not be a suitable setting for the education of many handicapped children.").

Each student's educational situation is unique. We find it unnecessary at this point in time to adopt a formal test for district courts uniformly to apply when deciding LRE cases. The Act itself provides enough of a framework for our discussion; if Beth's education at Lake Bluff Middle School was satisfactory, the school district would be in violation of

the Act by removing her. If not, if its recommended placement will mainstream her to the maximum appropriate extent, no violation occurs. In this case we can say with confidence that the Lake Bluff school district's decision to remove Beth from her regular school did not violate the IDEA's mandate to mainstream disabled children to the maximum extent appropriate. Beth was in class for about fifty percent of each day. Her academic progress was virtually nonexistent and her developmental progress was limited. Although the school district provided her with aides, communication devices, computerized books, and an individual curriculum, she was receiving very little benefit from her time there.

We agree with the school district's decision that a modicum of developmental achievement does not constitute a satisfactory education. The ELS classroom, so long as it includes reverse mainstreaming opportunities, as well as time spent with nondisabled peers in nonacademic classes, during special projects, lunch, and the like, is at an acceptable point along the "continuum of services" between total integration and complete segregation, and satisfies the requirement that Beth be mainstreamed to the maximum extent appropriate. 34 C.F.R. sec.300.551; 20 U.S.C. sec.1412(5). The school officials' decision about how to best educate Beth is based on expertise that we cannot match. They relied on years of evidence that Beth was not receiving a satisfactory education in the regular classroom. The placement shows a concern both for her development and for keeping her mainstreamed, to an appropriate extent, with her nondisabled peers. We cannot hold that the Lake Bluff School District has failed to provide her with the free, appropriate public education where she is mainstreamed to the maximum extent appropriate, to which she is entitled under the IDEA. Although we respect the input Beth's parents have given regarding her placement and the their continued participation in IEP decisionmaking, educators "have the power to provide handicapped children with an education they consider more appropriate than that proposed by the parents." Lachman v. Illinois State Bd. of Educ., 852 F.2d 290, 297 (7th Cir. 1988). We find that the district's proposed IEP, which includes reverse mainstreaming and

provides that Beth will take part in certain regular-education classes, does not violate the statutory LRE mandate.

III.  Conclusion

For the reasons stated herein, we find that the school district's recommendation to place Beth in an ELS classroom does not violate the IDEA. We AFFIRM the decision of the district court.

FOOTNOTES

/1 It is not yet determined at which school Beth's classroom will be. The district has recommended that she be placed in an ELS class at a public junior high school, several of which are under an hour from Beth's home.

/2 Although the motion granted by the district court was properly labeled one for summary judgment, this type of IDEA decision does not fit neatly into the generic definition of such a disposition. Due to the unique procedural posture of these cases, however, summary judgment has been deemed appropriate even when facts are in dispute, and is based on a preponderance of the evidence. Bd. of Educ. of LaGrange School Dist. No. 105 v. Illinois State Bd. of Educ., 184 F.3d 912, 914-15 (1999) (hereinafter LaGrange); A.P. v. McGrew, 1998 WL 808879 (N.D. Ill. Nov. 16, 1998). As the district court below noted, its decision is perhaps better described as judgment on the record.

/3 In fact, it is undisputed that keeping Beth mainstreamed in the regular classroom would be less restrictive than placing her in the ELS program.