# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Submitted September 30, 2024     Decided February 14, 2025

No. 23-7143

EDWARD M.R., BY AND THROUGH HIS PARENTS, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00177)

———

*Caitlin E. McAndrews* and *D. Daniel Woody* were on the briefs for appellants.

*Brian L. Schwalb*, Attorney General, Office of the Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Bryan J. Leitch*, Assistant Attorney General, were on the brief for appellee.

Before: HENDERSON, RAO and WALKER, *Circuit Judges*.

Opinion for the Court filed *Circuit Judge* WALKER.

Concurring opinion filed by *Circuit Judge* HENDERSON.

WALKER, *Circuit Judge*: Edward M.R. claims the District of Columbia violated his federal rights by failing to meet his special education needs.  But one of his claims is untimely.  And the other two claims lack merit.   So we affirm the district court.

**I**

Edward is a special-education student in Washington, D.C.'s public schools.  On June 19, 2020, Edward filed an administrative due process complaint alleging that he was denied a "free appropriate public education" under the Individuals with Disabilities Education Act.  *See* 20 U.S.C. § 1412(a)(1); *id.* § 1415(a), (b)(6).  He said his individualized education plans (IEPs) from 2015 through 2019 "have been insufficient to appropriately meet his needs."   JA 61-68; *see also* JA 66 (alleging that the District "fail[ed] to offer an appropriate IEP to meet [Edward's] needs").

In particular, Edward said that his IEPs from 2015 through 2019 "show the following deficiencies":

- "A dramatic decrease in speech/language therapy services, despite a noted lack of progress in pragmatic language skills;"

- "Increasing [Edward's] time spent outside general education without an accompanying increase in programmatic supports to provide him with the research-based instruction needed to make meaningful educational progress;"

- "Cutting occupational therapy service hours in half;"

- "Goals and objectives that do not clearly align with [Edward's] needs or present levels of educational performance;"

- "Failure to appropriately address significant needs in self-advocacy, social skills, pragmatic language, and functional academics; and"

- "Failure to offer meaningful, research-based specially designed instruction."

JA 62-63. Note that each of these alleged deficiencies concerns the content of Edward's IEPs, not their implementation — more on that later.

The hearing officer dismissed Edward's claims, finding that Edward's challenges to his 2015, 2016, and 2017 IEPs were untimely, and that his 2018 and 2019 IEPs were appropriate. Edward then sued in district court, challenging the hearing officer's determinations regarding the 2017, 2018, and 2019 IEPs. In a thorough opinion, the district court affirmed the hearing officer's decisions.

On appeal, Edward argues that his challenge to his 2017 IEP was timely and that his 2018 and 2019 IEPs violated the Individuals with Disabilities Education Act.

**II**

Edward's 2017 claim is untimely. The Individuals with Disabilities Education Act requires a plaintiff to initiate administrative proceedings "within 2 years of the date [that he] knew or should have known about the alleged action that forms

4

the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C).[1] Edward does not contest the hearing officer's conclusion that he had notice of his 2017 IEP claims on the day that the IEP issued: November 28, 2017. Indeed, he expressly waived any challenge to that finding in the district court, and he concedes it on appeal. *See* SA 64-65; Appellants' Br. at 7, 23. So Edward had until November 28, 2019 to challenge the 2017 IEP's *content* — as distinct from its later *implementation*. And because Edward challenged only the content of the 2017 IEP, his June 2020 challenge was filed seven months too late.

**III**

Edward's timely claims regarding his 2018 and 2019 IEPs lack merit.

*First*, Edward contends that his 2018 and 2019 IEPs were deficient because some educational goals were repeated year-to-year and because he regressed or failed to make meaningful progress on some goals.

---

[1] Nearby, the Act says that a due process complaint must allege a "violation that occurred not more than 2 years *before* the date the parent . . . knew or should have known about [it]." 20 U.S.C. § 1415(b)(6)(B) (emphasis added). Edward does not contest that § 1415(b)(6)(B) "reflect[s] the same statute of limitations set forth in § 1415(f)(3)(C)." *G.L. v. Ligonier Valley School District Authority*, 802 F.3d 601, 625 (3d Cir. 2015); *see id.* at 611-18; JA 64 (due process complaint) (The Act "neither contains a singular two-year cap on available remedies, nor two separate limitations periods totaling four years . . . ."); *id.* at 64-66 (explaining that the Act has a "traditional statute of limitations"); *see also, e.g.*, Appellants' Br. 10 (focusing on § 1415(f)(3)(C) as the operative statute-of-limitations provision); *cf. G.L.*, 802 F.3d at 607 (noting that some district courts have read §§ 1415(b)(6)(B) and 1415(f)(3)(C) together to yield a four-year limitations period).

Under the Individuals with Disabilities Education Act, an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 137 S. Ct. 988, 999, 1001 (2017). We evaluate IEPs' substantive adequacy "as of the time each IEP was created rather than with the benefit of hindsight." *Z. B. v. District of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018) (cleaned up). Edward needed to prove by a preponderance of the evidence that "the hearing officer was wrong" in concluding that Edward's IEPs were appropriate. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (cleaned up).

Edward has not met that burden. True, his 2018 IEP repeated some goals from his 2017 IEP, and his 2019 IEP repeated several goals from his 2018 IEP. But repeating goals was reasonable because Edward had yet to achieve them. Moreover, based on witness testimony, the hearing officer reasonably concluded that "[c]onsistency and repetition" were "important" for Edward considering his "severe memory issues." JA 23, 46. In addition, Edward's 2019 IEP contained a number of *new* goals, which on this record appear to have been "appropriately ambitious." *Endrew F.*, 137 S. Ct. at 1000.

At times, Edward seems to suggest that an IEP must bring about "meaningful progress." Appellants' Br. 35. But a child's "educational outcome" isn't the measure of his IEP's sufficiency — rather, the proper measure is the reasonableness of his IEP's design. *Endrew F.*, 137 S. Ct. at 998-1000 (cleaned up). And here, even if we consider Edward's lack of progress as some evidence that his IEPs were not reasonably designed from the get-go, that evidence is not enough. Edward must identify a flaw in the design of an IEP, and he has not done so.

*Second*, Edward claims that his IEPs did not include "research-based instruction" in speech and language or in occupational therapy. Appellants' Br. 44-45; *see* 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (an IEP must include "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child"). That claim, however, is "viable only if" an IEP's omissions "affected the student's substantive rights." *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis omitted). Here, the record shows that Edward *did* receive research-based instruction in speech and language, and in occupational therapy, even if his IEPs were silent on the matter. As such, his substantive rights weren't affected, and his claim fails.

*Finally*, Edward says that his IEPs provided for the use of "Applied Behavior Analysis," but his school didn't provide that research-based instruction. Appellants' Br. 45-46. By his own admission, this is an *implementation* claim. But Edward's due process complaint raised only IEP *content* claims. Because he failed to exhaust this claim through the administrative process, we do not consider it. *See* 20 U.S.C. § 1415(f)(3)(B); *Leonard by Leonard v. McKenzie*, 869 F.2d 1558, 1563 (D.C. Cir. 1989).

## IV

For these reasons, we **AFFIRM** the district court.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring:

I write separately on a topic that, although not made an issue here, I believe merits discussion: what procedure should be followed to resolve IDEA disputes. The District of Columbia moved for and obtained summary judgment but I question whether Rule 56 is the correct procedural vehicle. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). That requires the evidence to be "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Because a court cannot "make credibility determinations, weigh the evidence, or draw inferences from the facts" in a Rule 56 proceeding, *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005), all "justifiable inferences are to be drawn in [the nonmovant's favor]." *Anderson*, 477 U.S. at 255.

Disputed issues of fact inevitably cloud the district court's adjudication of whether a particular IEP is appropriate for a particular student. This is true even on a closed administrative record. When "the parties [do] not contradict one another's proffered facts, but only dispute[] the inferences that a fact finder would draw from those underlying facts," that conflict suffices to create a triable issue for the factfinder. *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers*, 329 F.3d 359, 362 (4th Cir. 2003); *accord Queen v. Schultz*, 747 F.3d 879, 888 (D.C. Cir. 2014) ("summary judgment is not available when material facts are susceptible to divergent inferences") (quotations omitted).

I believe that a better procedure is via a Rule 52 bench trial limited to the administrative record. Although we have routinely affirmed IDEA judgments resolved on summary judgment, *see, e.g.*, *Leggett v. District of Columbia*, 793 F.3d 59, 66 (D.C. Cir. 2015), the issue has not yet been authoritatively sanctioned by our Court. *See Legal Servs.*

*Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) (explaining that "judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed" and collecting cases); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("[S]ince we have never squarely addressed the issue, and have at most assumed [it], we are free to address the issue on the merits."). The consensus view of the courts of appeals appears to be that IDEA cases do not fit the traditional Rule 56 format.[1] Even courts that resolve IDEA cases on summary judgment note that

---

[1] *See, e.g.*, *Beth B. v. Van Clay*, 282 F.3d 493, 496 n.2 (7th Cir. 2002) (explaining that the district court's disposition in an IDEA case "is perhaps better described as judgment on the record"); *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003) ("the usual . . . summary judgment principles do not apply in an IDEA case" and district courts "often conduct[] a bench trial on a stipulated record") (quotations omitted); *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) (noting that "many IDEA claims do not fit into the typical summary judgment standard" and are more properly termed "judgment on the administrative agency's record," but withholding judgment as to whether "all summary judgment dispositions under the IDEA will always be better described as judgments on the record") (cleaned up); *Cnty. Sch. Bd. of Henrico Cnty. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 309 n.7 (4th Cir. 2005) ("IDEA actions . . . should typically be disposed of by motions for judgment," as "there are clearly disputed issues of material fact" and district courts are "entering judgment after what amounts to a bench trial" even if the court "proceed[s] on the basis of an unsupplemented . . . record") (quotations omitted); *E. R. ex rel. E. R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 762 (5th Cir. 2018) (noting that summary judgment is "not typical" for IDEA proceedings given the nature of the dispute).

3

Rule 56 is simply "a 'pragmatic procedural mechanism'" for review and that the ordinary Rule 56 standards do not apply. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (relying on the Ninth Circuit's determination that courts "may call the procedure 'a motion for summary judgment'" yet in substance apply different adjudicatory standards) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir.1995)). Rather than contort Rule 56, the district court has a readily available tool on its civil procedure toolbelt for resolving IDEA cases with disputed facts: Rule 52. Inasmuch as neither party here objected to the Rule 56 *modus operandi*, the district court cannot be faulted for following it. I point it out instead for future use.