NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1347
_____

I. K., a Minor, by and through her parents Christopher K. and Jennifer K.;
CHRISTOPHER K.; JENNIFER K., Individually and on their own behalf,
Appellants

v.

MANHEIM TOWNSHIP SCHOOL DISTRICT
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 5-19-cv-05517)
District Judge:  Honorable Karen S. Marston
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 24, 2023

Before:  JORDAN, GREENAWAY, JR., and McKEE, *Circuit Judges*

(Filed: May 15, 2023)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

The Appellants, a minor child and her parents, challenge the District Court's denial of their motion for judgment on the administrative record. They contend that Manheim Township School District failed to provide the minor, I.K., with a free and appropriate public education (a "FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U. S. C. §§ 1400-1482, and are accordingly entitled to tuition reimbursement. We will affirm.

## I. BACKGROUND[1]

I.K. is a special education student with autism, speech and language impairments, and Attention Deficit/Hyperactivity Disorder. Her primary needs at school are help in developing social skills and self-regulation to facilitate academic progress. She began receiving early intervention services in Pennsylvania preschool programs, and, after assessment, qualified to receive an individualized education program ("IEP") under the IDEA. After moving between public and private school, I.K. was enrolled in elementary school in the Manheim Township School District during the period relevant to this IDEA suit. The dispute centers on whether the School District provided I.K. with a FAPE during the 2018-19 school year.

The parents approved, without objection, each IEP issued from November 2017 to October 2018 during I.K.'s second- and third-grade years. It wasn't until the middle of

---

[1] The record in this case is extensive. Since we write for the parties alone, we refer only to the relevant parts of the record required for this opinion.

her third-grade year – following the implementation of the November 2018 IEP – that the parents became so dissatisfied with the pace of I.K.'s educational progress that they removed her from the Manheim Township School District and enrolled her in the private Lancaster Montessori School.[2] A few days after I.K.'s removal and new placement, her parents filed a due process complaint under the IDEA, requesting tuition reimbursement. An administrative hearing officer conducted the requisite due process hearing the following year, which included hours of argument, testimony, and hundreds of pages of record evidence. The hearing officer issued his decision on August 23, 2019, determining that the School District provided a FAPE to I.K., and, accordingly, denied the Appellants' request for tuition reimbursement. The Appellants appealed that decision by filing a timely complaint with the District Court pursuant to 20 U.S.C. § 1415(i)(2).[3] The Court denied the Appellants' motion for judgment on the administrative record because it agreed with the hearing officer's determination that the School District had provided I.K. with the legally mandated FAPE.

---

[2] The District Court found that I.K. improved "significantly" after enrolling at the Montessori school. (App. at 25).

[3] The parents also appeal the District Court's denial of their disability discrimination claims pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213. But, importantly – and as discussed later, *see infra* n.10 – since we cannot find in the record any evidence of the Appellants first appealing the local hearing officer's decision to the Pennsylvania "[s]tate educational agency" as required by 20 U.S.C. § 1415(g)(1), the Appellants have not shown that they met the IDEA's exhaustion requirements pursuant to 20 U.S.C. § 1415(l) for any non-IDEA claims.

## II. DISCUSSION[4]

States receiving federal education funding must, in accordance with the IDEA, provide a FAPE for all children with special needs. 20 U.S.C. § 1412(1). Key to that process is the development of IEPs. 20 U.S.C. § 1414(d). The Supreme Court has instructed that a child's IEP must be "reasonably calculated to enable the child to receive educational benefits," which means that the IEP should "enable the child to achieve passing marks and advance from grade to grade." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 204, 207 (1982). We have further clarified that an IEP "must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d

---

[4] The District Court had federal question jurisdiction under 28 U.S.C. § 1331 pursuant to express authorization in the IDEA, 20 U.S.C. § 1415(i)(3)(A). We asked the parties to clarify our jurisdiction over the District Court's denial of the parents' motion for judgment on the administrative record. More specifically, we asked whether the order was a final order under 28 U.S.C. § 1291, since such a motion appeared to be similar to a motion for summary judgment, a denial of which we typically do not consider to be final and appealable. The parties filed a joint response asserting that the lower court's order was a final, reviewable order because the District Court dismissed all of the claims raised in the complaint and directed the clerk to close the case. They also argued that "[m]ost special education appeals … are resolved by way of cross-motions for judgment on the administrative record[,]" and that "[t]he judicial review provisions of the IDEA, not [Federal Rule of Civil Procedure] 56, govern the disposition of such actions" (3d Cir. D.I. 6 at 1) – that is, the IDEA expressly authorizes district courts to make findings of fact and to grant or deny relief regardless of the presence of genuine issues of material fact. 20 U.S.C. § 1415(i)(2). We agree that we have jurisdiction over this appeal under 28 U.S.C. § 1291. *Cf. Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313-14 (11th Cir. 2003) (asserting jurisdiction over summary-judgment-like motions in IDEA cases because "district court[s] often conduct[] 'a bench trial on a stipulated record[,]'" more closely aligned to factfinding under Federal Rule of Civil Procedure 52 rather than Rule 56.).

Cir. 2015); *cf. Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386 (2017).[5]

In cases arising under the IDEA, a district court applies what we have described as a "modified de novo" review, in which a court makes its own findings by a "preponderance of the evidence," 20 U.S.C. § 1415(i)(2)(C)(iii), while giving "due weight" and deference to administrative findings, *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (quoting *Rowley*, 458 U.S. at 206). The district court accepts "the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (emphasis removed). The factual findings from the administrative proceedings are considered "prima facie correct," *id.*, and reviewing courts do not "substitute their own notions of sound educational policy for those of the school authorities." *Rowley*, 458 U.S. at 206. The burden of persuasion is on the party challenging the administrative decision. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

We exercise plenary review over the District Court's conclusions of law, including the legal standards it applies under the IDEA. *Id.* at 268. We review the findings of fact

---

[5] The Court in *Endrew* rejected the Tenth Circuit's "merely more than *de minimis*" test for education advancement under an IEP, and, while it declined to elaborate on what "appropriate" progress specifically entailed, the Court said that "[t]he IEP must aim to enable the child to make progress." 580 U.S. at 309, 402-03. It further emphasized that the statutory language provides that "[t]he instruction offered must be '*specially* designed' to meet a child's '*unique* needs' through an '[i]*ndividualized* education program.'" *Id.* at 400 (second alteration in original).

for clear error and accept them unless they are "completely devoid of minimum evidentiary support displaying some hue of credibility," or "bear[] no rational relationship to the supportive evidentiary data." *N.J. Retail Merchants Ass'n v. Sidamon– Eristoff*, 669 F.3d 374, 390 (3d Cir. 2012) (internal quotation marks and citation omitted). The issues of whether an IEP is appropriate and, accordingly, "whether the [school] [d]istrict fulfilled its FAPE obligations" are questions of fact. *P.P. ex rel.*, 585 F.3d at 735.

The Appellants contend that the District Court applied the wrong legal standard to evaluate I.K.'s IEPs and that the Court clearly erred in finding that the School District provided a FAPE. We disagree.

## A.     The District Court applied the correct legal standard

According to the Appellants, neither the hearing officer nor the District Court properly assessed whether an appropriate IEP and FAPE were provided to I.K. They say there was a failure to adequately take into consideration I.K.'s significant improvement after being placed in the private Montessori school, when assessing the adequacy of the IEP. Our precedent is clear, however, that the adequacy of an IEP is determined "as of the time it is offered to the student, and not at some later date." *Fuhrmann on Behalf of Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993). And that is exactly what the hearing officer did when analyzing I.K.'s various IEPs, an analysis the District Court rightly upheld.

### B. The District Court did not clearly err in finding that I.K. received a FAPE

The Appellants contend that the School District ignored a "rapid behavioral and emotional spiral" that prevented I.K. from achieving her educational goals. (Am. Opening Br. at 35.) Upon review of the record and the District Court's decision, we cannot say that the District Court's finding that the School District complied with its statutory responsibility to provide an adequate FAPE is "completely devoid of minimum evidentiary support[.]" *N.J. Retail Merchants Ass'n*, 669 F.3d at 390. While no one appears to dispute that I.K.'s behavioral difficulties were increasing, the evidence supports the conclusion that the School District was working with I.K.'s parents to develop "reasonably calculated" IEPs to facilitate the child's educational progress, *Rowley*, 458 U.S. at 204. Indeed, from January to December 2018, the School District implemented six IEPs, five of which the parents approved without objection.[6]

The August 2018 IEP, given just prior to I.K. beginning third grade, reflected the evaluation that, "[b]ut for the emerging negative self-talking and behavioral concerns, the overall data indicate[s] steady positive growth and learning," (App. at 74), and that, specifically, I.K. "met her reading comprehension, reading fluency, written expression (planning) and math computation goals," (App. at 18). By the time of the October 2018 IEP, I.K.'s test scores "remained constant[,] which according to standard testing practices, indicates learning, growth and progress." (App. at 75.) I.K.'s parents did not,

_____

[6] I.K.'s parents also reported that by the start of third grade, I.K. "appeared to be coming home happy each day." (App. at 17-18 (citing App. at 680).)

and have not, presented any evidence undermining those indicators of academic progress. The parents instead focus on their daughter's behavioral issues.[7] Those problems were no doubt very troubling, but the School District was not ignoring them.[8] From August to November 2018, the School District implemented measures such as "communication logs" (reporting behavioral information to I.K.'s parents daily), (App. at 18), ensuring an

---

[7] The Appellants also appear to quibble with the District Court's separate factual findings that did not appear in the hearing officer's report, including, inter alia, the potential impact of the parents' contemporaneous marital problems during the periods of behavioral issues and the parents' testimony about I.K.'s hyperbolic self-harm comments. The Appellants say this "constitute[d] an abuse of discretion" because the court "was bound by the undisputed facts, and not free to substitute its own facts based on speculation or conjecture." (Am. Opening Br. at 10 n.5; 34 n.18.) Not so. The IDEA expressly instructs district courts to review the administrative record, hear additional evidence, and base its decision on the preponderance of the evidence, 20 U.S.C. § 1415(i)(2)(C), which is what the District Court did here. Any of the Court's additional factual findings cited the administrative record and the Court based its decision on the preponderance of the evidence as a whole.

[8] The parties do not dispute that between September and November 2018, there were "upwards of 66 incidents" of "self-injurious behavior" or threats to self-harm (App. at 58), but I.K. was prone to hyperbole, as admitted by the parents in deposition testimony (see App. at 19 n.24). The tendency to exaggerate was explained by her parents as "an autism issue with self-regulation." (App. at 19 n.24.) And while the school did not conduct a risk assessment as typically required by school policy under similar circumstances, the District Court found that this was because the school did not believe a risk assessment was necessary based on its knowledge of I.K.'s hyperbolic tendencies and input from her parents. (Id.) A special education supervisor at the school also testified that if the actual safety of the child is not deemed to be at risk, then they generally adjust "through the IEP first," as occurred here. (Id.) Furthermore, the record evinces cooperation between both the School District and I.K.'s parents throughout the relevant time period to address the alarming, and increasing, behavioral issues. A lack of success in behavioral management does not negate the academic progress I.K. was showing. While her parents contend that the academic progress was not meaningful, after giving due weight to the administrative record, and as discussed further herein, we cannot say the District Court clearly erred in finding a FAPE was provided.

8

adult was with her at all times, placing a classroom divider to separate I.K. from a problematic classmate, and requesting observation by a specialist to determine if she might benefit from additional support.

Even though I.K. appears to have made significant strides after her removal from the School District and placement in the private Montessori school, it does not follow that the School District failed its statutory duties under the IDEA to provide her with a FAPE. The private school's approach to I.K.'s education was markedly different from the School District's,[9] but that does not undermine evidence of the School District's good faith efforts or its success in providing a reasonably calculated FAPE. On the record before us, the District Court did not clearly err in finding that I.K. received a FAPE while enrolled in the School District.[10]

## III. CONCLUSION

Consistent with the foregoing, we will affirm the ruling of the District Court.

---

[9] For example, the Montessori school does not have a special education classroom, so I.K. was placed in the regular education classroom 100% of the time.

[10] Because we hold that the District Court did not err in finding that I.K. received a "reasonably calculated" FAPE under the IDEA, *Rowley*, 458 U.S. at 204, the Appellants' discrimination claims under § 504 of the Rehabilitation Act and the ADA fail because there was no improper discrimination based on disability. In any event, the Appellants did not exhaust their claims for relief under the administrative procedures of the IDEA as required when claims for relief overlap between federal statutes, *see supra* n.3; and here, the Appellants seek relief available under the IDEA, i.e., tuition reimbursement and compensatory education. *See* 20 U.S.C. § 1415(l); *cf. Luna Perez v. Sturgis Public Schools*, 598 U.S.___, 143 S. Ct., 859, 863-64 (2023) (holding that an ADA suit collateral to an IDEA action did not require administrative exhaustion because it sought relief unavailable under the IDEA – i.e., compensatory money damages).