**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1387
_____

G.L.; MR. G.L. and MRS. E.L., in their own right

v.

LIGONIER VALLEY SCHOOL DISTRICT AUTHORITY,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cv-00034)
District Judge:  Honorable Mark R. Hornak
_____

Argued: December 16, 2014

Before:  McKEE, *Chief Judge*, GREENAWAY, JR., and
KRAUSE, *Circuit Judges*

(Filed: September 22, 2015)
_____

John K. Greiner, Esq.
Charles W. Jelley, Esq.     [Argued]
Margaret A. Tremba, Esq.
Kristen C. Weidus, Esq.
Tremba, Jelley & Kinney
302 West Otterman Street
Greensburg, PA 15601
        *Counsel for Appellees*

Christina Lane, Esq.          [Argued]
Sanchez Legal Group
2403 Sidney Street, Suite 242
Pittsburgh, PA 15203
        *Counsel for Appellant*

Mark L. Gross, Esq.
Holly A. Thomas, Esq.
United States Department of Justice
Civil Rights Division, Appellate Section
P.O. Box 14403
Ben Franklin Station
Washington, DC 20044
        *Counsel for Amicus Curiae*

Jennerifer N. Rosen Valverde, Esq.        [Argued]
Rutgers University School of Law
Special Education Clinic
123 Washington Street
Newark, NJ 07102
        *Counsel for Amici Appellees*[1]

---

[1] We thank the seven organizations led by the Education and Health Law Clinic at Rutgers University

_____

OPINION

_____

KRAUSE, *Circuit Judge.*

The Individuals with Disabilities Education Act ("IDEA") broadly authorizes the courts to provide appropriate relief, including compensatory education, to children who have been deprived by their state or local educational agencies of a free appropriate public education. When Congress reauthorized the IDEA in 2004, it enacted 20 U.S.C. § 1415(f)(3)(C), a statute of limitations that requires parents to file a due process complaint no more than two years *after* the parents "knew or should have known" about the alleged deprivation, that is, within two years of the reasonable discovery of that violation.[2] The legislation simultaneously amended 20 U.S.C. § 1415(b)(6)(B), which previews the various procedural safeguards available to parents, including the opportunity to file that due process complaint. The new language added to this prefatory subsection, however, described the due process complaint as alleging an injury that occurred not more than two years *before* the reasonable discovery date.

_____

School of Law-Newark for their helpful perspective and excellent briefing and argument in this case.

[2] The parties here, like some district courts in our Circuit, referred to the reasonable discovery date as the "KOSHK date." *See, e.g.*, *Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 596 (M.D. Pa. 2014).

In an appeal stemming from a due process complaint filed by the parents of G.L., a student with special needs, we consider, in a matter of first impression among the Courts of Appeals, how these two provisions should be interpreted together and what effect they have on the courts' authority to remedy IDEA violations, in particular, through the award of compensatory education. We address today which, of a variety of interpretations, is correct: Does § 1415(b)(6)(B) limit compensatory education to injuries occurring two years before the filing of the complaint, even if earlier injuries are claimed within two years of their reasonable discovery, as urged by Appellant Ligonier Valley School District Authority? Does it limit compensatory education to injuries that occurred from two years before their reasonable discovery through the filing of the complaint, up to two years after that discovery, i.e., the "2+2" approach taken by the District Court and urged by G.L.? Does it impose only a pleading requirement, without affecting the availability of a remedy for timely and well-pleaded claims, as argued by Amici Appellees and G.L. in the alternative? Or is it simply a restatement, albeit ill-phrased, of the same two-year statute of limitations set forth in § 1415(f)(3)(C), as asserted by the United States Department of Education ("DOE")? Recognizing the uncertainty in this area, the District Court certified the question for interlocutory appeal.

We now conclude, after careful consideration of the parties' plain language arguments, the statutory context and structure, the DOE's interpretive guidance, and the legislative history, that § 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations. That is, both sections reflect the same two-year filing deadline for a due process complaint after the reasonable discovery of an

4

injury, and § 1415(b)(6)(B) neither imposes a pleading requirement nor in any respect alters the courts' broad power under the IDEA to provide a complete remedy for the violation of a child's right to a free appropriate public education.

## I.    Facts and Procedural History

### A.  G.L.'s Schooling

After spending the previous year at a parochial school, G.L. entered high school in the Ligonier Valley School District (the "District") in the fall of 2008.[3]  At a school open house shortly after he started, G.L.'s teacher told his father that G.L. seemed distracted in class and lacked organizational skills.  G.L.'s father then orally requested that the District evaluate G.L. for any special education needs.  The request was to no avail:  No evaluation was conducted and, instead, in the wake of a tragic car accident in which G.L. lost his older sister, the District, purportedly on the basis of information in her obituary, opened an investigation into whether G.L. even lived within District boundaries. That investigation confirmed G.L.'s residence and thus the District's obligation under the IDEA to provide him with a free appropriate public education ("FAPE").

In the meantime, however, G.L. continued to struggle academically.  For a time, he was able to keep those struggles

_____

[3] We review the allegations of the complaint and all reasonable inferences drawn therefrom in the light most favorable to G.L., the non-moving party. *See D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014).

5

partially hidden from his parents by intercepting and altering his report card. At the conclusion of the 2008-09 school year, however, District officials informed G.L.'s parents that he would need to repeat the ninth grade. It was at this point that his parents learned that he was being bullied at school on the basis of his sexual orientation, with students regularly calling him a "faggot" and a "homo," and that as a result he was having trouble eating, sleeping, and concentrating on his studies.

Faced with the District's contention that G.L. should repeat the ninth grade, G.L.'s parents complained to the school principal about the bullying and again requested that G.L. be evaluated for special education needs. The conversation became heated, and the principal told G.L.'s father to speak with the parents of the bullying students himself. The principal also informed G.L.'s parents that a request for special education evaluation needed to be in writing. G.L.'s father then immediately handwrote and submitted a request, which G.L.'s mother followed up with an email to the principal. Apparently not caring for the tone of that email, the principal made an angry phone call to each of G.L.'s parents. The same day, the principal requested that the District again investigate the residency of G.L. and his family.

The District then began another investigation, representing to the family that the new investigation was based on an anonymous phone call to the District. Meanwhile, the principal also conducted his own ad-hoc investigation, using school computers to search for voting records of G.L.'s parents. Over the next month, it appears little was done to assist G.L. with the challenges he faced either academically or socially. The District did, however,

demand that the family provide a number of additional documents to prove residency. Eventually, the District agreed to formally evaluate G.L. for the remedial support to which he might be entitled pursuant to the IDEA, and in August 2009, after the family hired an attorney, yet again confirmed that G.L. lived within District boundaries.

Thus, when G.L. returned to school in the fall, the District finally evaluated him for his special education needs for the 2009-10 school year and instituted a plan to prevent him from being bullied. That evaluation revealed that G.L. did indeed have learning disabilities in math, reading, and writing. In November 2009, the District offered to G.L.'s parents an Individualized Education Program ("IEP"), which G.L.'s parents found inadequate and sought to supplement with supports tied to each of G.L.'s special needs. Despite multiple meetings between the parents and District officials during the months of December and January, they were unable to agree on the educational goals that would satisfy a FAPE for G.L.

While the parties were attempting to negotiate a satisfactory IEP over the fall and winter, the District also attempted to implement a plan to prevent G.L. from being bullied. However, by January 2010, the bullying not only had continued, but had grown to include the participation of the school's football coach, who allegedly made a disparaging remark to another student about that student's relationship with G.L., and did so in front of some of the very students who were bullying G.L. When he learned of this public remark by the coach, G.L. became distraught and refused to return to school. Instead, his parents picked up and returned his school work, which he completed at home. As this went on, G.L.'s IEP team continued to meet, and his parents were

7

in regular contact with District officials to attempt to address the bullying situation.

In March 2010, G.L. was evaluated by an intermediate unit psychologist, who conditionally diagnosed him with two additional disabilities, including post-traumatic stress disorder caused by the ongoing bullying. On March 8, 2010, frustrated with the bullying that had been allowed to escalate and apparently had caused additional disabilities in their child, upset by his academic struggles, and dissatisfied with the IEP offered by the District, G.L.'s parents withdrew him from the school and enrolled him in a cyber charter school. The District has conceded that March 9, 2010 reflects the date G.L.'s parents "knew or should have known" about the deprivation of a free appropriate public education to G.L., that is, the reasonable discovery date for purposes of this case.[4]

On January 9, 2012, within two years of the reasonable discovery date, and thus within the statute of limitations set forth in § 1415(f)(3)(C), G.L.'s parents filed their due process complaint, alleging that the District denied him a FAPE and requesting compensatory education for September 2008 through March 2010—that is, the entire period that G.L. was allegedly denied a FAPE by the District before he withdrew from school.

---

[4] The District has not disputed at any point during these protracted proceedings, including on appeal, that March 9, 2010 was the reasonable discovery date. Having not raised such an argument to date, the District has waived it in any event. *See Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 310 n.5 (3d Cir. 2015).

8

## B. Procedural History

As required by the IDEA, G.L.'s parents initially requested their due process hearing by filing a complaint with the Pennsylvania Department of Education, which in turn assigned it to a Hearing Officer. The Hearing Officer acknowledged that the language of § 1415 seemed to describe two different time periods relevant to the IDEA's statute of limitations: 20 U.S.C. § 1415(f)(3)(C), which provides that a due process complaint must be filed no more than two years after the reasonable discovery date, and 20 U.S.C. § 1415(b)(6)(B), which describes the due process complaint as alleging an injury that occurred not more than two years before the reasonable discovery date. However, the Hearing Officer adopted the District's position that the subsections, first, were actually the "same," and, second, barred relief for violations that occurred more than two years before the complaint was filed. Put differently, the Hearing Officer adopted an effective two year remedy cap, compensating only injuries that actually occurred within two years of the filing date, regardless of whether the parents filed within two years of reasonably discovering older injuries.

Applying this interpretation to G.L.'s complaint, the Hearing Officer held that—even assuming that the District deprived G.L. of a FAPE from September 2008 until March 9, 2010, that the parents reasonably did not know about the injury before March 9, 2010, and that the January 9, 2012 complaint was timely filed within two years of that March 9, 2010 discovery—G.L.'s remedy was limited to injuries that occurred in the three months between January 2010 and March 2010 because that was the only period G.L. attended the District school within the two-year window before the filing of the complaint. Because the Hearing Officer

9

proceeded to hold that G.L. was not injured during this period, i.e., that the District had provided a FAPE to G.L. during the 2009-2010 school year, the Hearing Officer denied any award of compensatory education, even for those three months.[5]

The District Court, reviewing this decision, disagreed. In denying the District's motion to partially dismiss the complaint on the basis of the alleged remedy cap, the District Court construed § 1415(f)(3)(C) and § 1415(b)(6)(B), in combination, to mean that G.L.'s relief may extend from two years *before* the reasonable discovery date through the date the complaint was filed, which could be up to two years *after* the reasonable discovery date, for a maximum period of relief of four years. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, No. 13-34, 2013 WL 6858963, at *4 (W.D. Pa. Dec. 30, 2013). The District Court thus adopted what has become known as the "2+2" construction of these statutory sections, *id.* at *4-6, applying the same construction embraced by three other district courts in this Circuit, *see M. v. Penn Manor Sch. Dist.*, No. 12-3646, 2015 WL 221086, at *5 (E.D. Pa. Jan. 14, 2015); *Jana K.*, 39 F. Supp. 3d at 596-600; *I.H. ex rel D.S. v.*

---

[5] Given his interpretation of the statute of limitations provision, the Hearing Officer did not have occasion to address the parents' contention that G.L. was denied a free appropriate public education throughout the 2008-2009 school year. He did, however, hold that the District had discriminated against and had retaliated against G.L. in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

*Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 773-74 (M.D. Pa. 2012). Because the 2+2 construction would render G.L.'s injuries from September 2008 to January 2010 redressable upon finding a violation, the District Court remanded for the Hearing Officer to address whether the District provided G.L. a FAPE during the relevant period. 2013 WL 6858963, at *6. However, recognizing the uncertainty in this area and correctly identifying this issue as one that was "important, controlling, and recurring," *id.*, the District Court stayed its remand order and certified the issue for interlocutory appeal, which we then granted.[6]

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1292(b).

The District Court's construction of § 1415(f)(3)(C) and § 1415(b)(6)(B) presents a legal question over which we apply plenary review. *See P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).

---

[6] Because the District Court remanded on this basis, it did not address the Hearing Officer's finding that, notwithstanding the disturbing manner in which the District treated G.L. and his family, the District did not deprive G.L. a FAPE during the 2009-2010 school year.

11

### III. The Individuals With Disabilities Act

#### A. Statutory Overview

The IDEA is intended to ensure that every child with special needs is afforded a "free appropriate public education designed to meet [those] unique needs," 20 U.S.C. § 1400(d)(1)(A), through the statute's "comprehensive . . . remedial scheme," *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007) (en banc). The law ensures that right "by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P.*, 585 F.3d at 735.

Once a child is identified as having special needs, "[a] school district provides a FAPE by designing and implementing an individualized instructional program set forth in an [IEP], which 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *Id.* at 729-30 (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004)). To the extent a school district fails to provide a student with a FAPE, a parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer. 20 U.S.C. §§ 1415(b)(6), (f)(1)(A); *D.E.*, 765 F.3d at 274. A party dissatisfied with the result of that hearing may then file an action in state or federal court. 20 U.S.C. § 1415(i)(2); *D.E.*, 765 F.3d at 274.

Under the IDEA, a "district court is authorized to grant 'such relief as the court determines is appropriate,' including attorneys' fees, reimbursement for a private educational

12

placement, and compensatory education." *A.W.*, 486 F.3d at 802 (quoting 20 U.S.C. § 1415(i)(2)(C)(iii)).  Compensatory education "aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA," by providing the educational services children should have received in the first instance. *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005).  This "judicially-created remedy . . . has received the imprimatur of this Court," *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 496 (3d Cir. 2012), and reflects the "broad discretion," *Bucks Cnty. Dep't of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61, 67 (3d Cir. 2004), that Congress has granted to the courts "to remedy the deprivation of the right to a free appropriate education," *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 536 (3d Cir. 1995).

## B. The 2004 Reenactment and Its Aftermath

Prior to 2004, the IDEA did not include a statute of limitations.  *See Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 413 (3d Cir. 2010).  Congress found this problematic because parents could knowingly wait for many years to file complaints, resulting in school districts that were "often surprised by claims . . . involving issues that occurred in an elementary school program when the child may currently be a high school student."  H.R. Rep, 108-77, at 115 (2003).  Waiting many years to bring actions on behalf of a child, Congress reasoned, jeopardized that child's education and created distrust between school administrators and parents. *Id*.

In the 2004 reauthorization of the IDEA, Congress sought to remedy this problem by adding a statute of limitations to 20 U.S.C. § 1415(f), which is entitled "Impartial due process hearing" and sets forth the procedures for the life cycle of such hearings, from the initial receipt of the due process complaint that constitutes the request for the hearing, 20 U.S.C. § 1415(f)(1), through the findings of the hearing officer, 20 U.S.C. § 1415(f)(3)(E). The new subsection, § 1415(f)(3)(C), was entitled "Timeline for requesting hearing" and states:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C). Accordingly, under the IDEA parents must file their due process complaint within two years of the date they "knew or should have known" of the violation, unless the state has its own statute of limitations, in which case the state's statute controls. *Id.*; *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 & n.2 (3d Cir. 2012). The reauthorization also added two equitable tolling exceptions to this statute of limitations, which apply regardless of whether the state has enacted its own statute of limitations: specific misrepresentations by the school district and the withholding

14

of statutorily mandated disclosures. 20 U.S.C. § 1415(f)(3)(D).[7]

Section 1415 overall is a lengthy and detailed section, the "entire purpose" of which "is to provide parents 'procedural safeguards with respect to the provision of a free appropriate public education.'" *D.M. v. N.J. Dep't of Educ.*, --- F.3d ----, No. 14-4044, 2015 WL 5255088, at *5 (3d Cir. Sept. 10, 2015) (quoting 20 U.S.C. § 1415(a)).[8] The section opens with § 1415(a), entitled "Establishment of procedures," which requires state and local educational agencies to "establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education" by these agencies. 20 U.S.C. § 1415(a). It proceeds in § 1415(b), entitled "Types of procedures," to list out and briefly summarize "[t]he procedures required by this section," 20 U.S.C. § 1415(b), (b)(2)-(8), in roughly the same order these procedures are then more fully described in the subsections that follow, 20 U.S.C. § 1415(c)-(f). Among the procedures listed in § 1415(b), even before the 2004 reenactment, was "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)

---

[7] These exceptions are not at issue in this case.

[8] We describe in some detail here the structure of this section because, as will become apparent, it provides important context for our interpretation of the two subsections at issue.

15

(1999) (amended 2004), corresponding to the fuller explanation of the due process hearing procedures set forth in § 1415(f) (1999) (amended 2004).

Accordingly, along with the addition of the statute of limitations to § 1415(f)(3)(C), the 2004 reenactment also amended § 1415(b)(6) to read:

(b) Types of procedures

The procedures required by this section shall include the following: . . .

(6) An opportunity for any party to present a complaint—

(A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and

(B) **which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint**

16

**under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph**.

20 U.S.C § 1415(b)(6) (emphasis added). With this amendment, the complaint procedure described at § 1415(b)(6)(B) came to mirror the statute of limitations at § 1415(f)(3)(C) in almost all respects: they both describe a two-year time limit that hinges on the reasonable discovery date; they both provide that any state statute of limitations will override this timeline; and they both incorporate the two exceptions to the statute of limitations set forth in § 1415(f)(3)(D).[9]     Unlike     § 1415(f)(3)(C),     however,

---

[9] While § 1415(b)(6)(B) describes "present[ing] a complaint," and § 1415(f)(3)(C) describes "request[ing] an impartial due process hearing," both sections address the filing of the same due process complaint because there is no dispute that presenting a complaint is merely the vehicle by which a due process hearing is requested. *See* 20 U.S.C. § 1415(f)(1)(A) (noting that a hearing is held "[w]henever a complaint has been received under subsection (b)(6)"); *see also* United States Department of Education, Questions and Answers on IDEA Part B Dispute Resolution Procedures, OSEP Memo 13-08, 34 (2013) (explaining that "[t]he IDEA Amendments of 2004 made significant changes to IDEA's due process procedures, and parties no longer have the right to request a due process hearing directly" but instead "first must file a due process complaint").

§ 1415(b)(6)(B)'s two-year limitations period runs backward instead of forward from the reasonable discovery date.

The differences in the language of these provisions and the fact that they appear to move in opposite directions from the reasonable discovery date, has given rise to confusion in the wake of the 2004 reenactment, with district courts within this Circuit interpreting them in a range of ways. Some have construed them to limit redress to the two years preceding a complaint. *See, e.g.*, *D.C. v. Mount Olive Twp. Bd. of Educ.*, No. 12-5592, 2014 WL 1293534, *21-22 (D.N.J. Mar. 31, 2014). Some have interpreted them to impose a filing deadline but not to limit the remedy for timely-filed claims. *See, e.g.*, *Cent. Sch. Dist. v. K.C. ex rel. S.C.*, No. 11-6869, 2013 WL 3367484, at *12 n.6 (E.D. Pa. July 3, 2013) (collecting cases) ("We also agree with the conclusion reached by several courts within this district, that the IDEA's statute of limitations does not apply to limit the permissible period of compensatory educational awards."). And at least four, including the District Court here, have adopted the 2+2 analysis. *See, e.g.*, *G.L.*, 2013 WL 6858963, at *3-6.

The District contends there can be no confusion because we have already addressed and resolved the question of how these provisions interact with each other and how they apply to claims dating back a number of years in *Steven I.*, 618 F.3d 411, and *D.K.*, 696 F.3d 233. That resolution, according to the District, is that we "definitively stated that claims are barred where they are alleged to occur two *years prior to the date of filing*." Appellant's Br. 8 (citing *Steven I.*, 618 F.3d at 417, and *D.K.*, 696 F.3d at 254). This argument reflects a fundamental misunderstanding of our prior cases. Those cases held that § 1415(f)(3)(C) bars claims that are not filed within two years after the parents "knew or should have

known" about the injury—a proposition that is now well-established and is not disputed by either party to this case. However, neither *Steven I.* nor *D.K.* says anything about claims that *are* filed within two years of that "knew or should have known" date but happen to relate to an injury that took place more than two years before the complaint was filed.

In *Steven I.*, we considered a case brought by parents who had knowingly sat on a claim for years, *see Mark v. Cent. Bucks Sch. Dist*., No. 08-571, 2009 WL 415767, at *4 (E.D. Pa. Feb. 18, 2009), *rev'd and remanded sub nom. Steven I*., 618 F.3d at 417, and held that § 1415(f)(3)(C)'s two-year statute of limitations applies retroactively to claims that predated the 2004 amendments and "bars any causes of action that *accrued* prior to" two years before the filing of the due process complaint, even if the violation continues into the two-year window before the complaint was filed. 618 F.3d at 417 (emphasis added). Likewise, in *D.K.*, where we held that the statutory tolling provisions of § 1415(f)(3)(D) precluded application of common law tolling doctrines and were therefore the exclusive exceptions to the IDEA's two-year statute of limitations, we reaffirmed our rejection of the "continuing violation" doctrine and held that the claims in that case, which we observed had been discovered years earlier, were, as the parents conceded, "limited to the two-year time period" before the filing of the complaint under § 1415(f)(3)(C). *D.K*, 696 F.3d at 248, 254. Indeed, contrary to the District's reading, we expressly stated in *D.K.* that parents must request a due process hearing, not within two years of the occurrence of the injury, but "within two years of 'the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint.'" *Id.* at

19

244 (alterations in original) (quoting 20 U.S.C. § 1415(f)(3)(C)).

Although we observed in passing in *D.K.* that this two-year statute of limitations in § 1415(f)(3)(C) was "the same" two-year period that parents had to file an administrative complaint under § 1415(b)(6)(B), *id.*, we did not there and have not since had occasion to reconcile the differences between the language of § 1415(b)(6)(B) and § 1415(f)(3)(C) or to consider how these provisions affect the remedy available for claims spanning multiple years that *were* filed within two years of the date the parents first "knew or should have known" about the basis for those claims. Nor has any other Court of Appeals addressed the interplay between § 1415(f)(3)(C) and § 1415(b)(6)(B). We resolve these issues today.

## IV.    Analysis

The starting point of all statutory construction is the text of the statute, but where that text is ambiguous, "we 'must do our best, bearing in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 135 S. Ct. 2480, 2492 (2015) (quoting *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2441 (2014)). Thus, we consider below (1) the plain language arguments of the parties and amici; (2) the broader context of the statute; (3) the position of the DOE; and (4) the legislative history of the 2004 amendments, and we conclude that applying the plain language of the text would force us to give § 1415(b)(6)(B) a meaning that "turns out to be untenable in light of the statute as a whole.'" *King*, 135 S. Ct. at 2495 (internal quotations marks and alteration

20

omitted).  Instead, our analysis confirms that, as we presaged in *D.K.*, § 1415(b)(6)(B) and § 1415(f)(3)(C) do indeed reflect "the same" statute of limitations, 696 F.3d at 244, which imposes a deadline on the filing of claims once they are reasonably discovered but does not limit the redress available for timely-filed claims.

### A. The Plain Language of § 1415(b)(6)(B) Is Ambiguous

In interpreting § 1415(b)(6)(B), we confront a statutory provision that by its plain terms does not impose any obligation on parents, but rather identifies the "opportunity . . . to present a complaint" among a list of procedural safeguards in the prefatory subsection of § 1415, which are then explicated in the subsections that follow.  20 U.S.C. § 1415(b)(6)(B).  Meanwhile, the amendment to § 1415(f)(3)(C) by its plain terms describes the "[t]imeline for requesting [a] hearing" and mandates that "[a] parent . . . shall request an impartial due process hearing within 2 years" of the reasonable discovery date.  The amendment to § 1415(b)(6)(B) appears to conform the description of the complaint that previously appeared in § 1415(b)(6), i.e., the mechanism to "request an impartial due process hearing," to § 1415(f)(3)(C) in every respect—including the exceptions—but one: the timeframe of before, rather than after, the reasonable discovery date.  *Id.* § 1415(b)(6)(B), (f)(3)(C).  No explanation is given for this singular difference.  The clearest way to demonstrate the ambiguity it has created in the statute, however, is through the diametrically opposed interpretations proposed by the parties themselves.

21

### i. The School District's Proposed Remedy Cap

We begin with the District, which contends, first, that § 1415(b)(6)(B) describes the same two-year statute of limitations as § 1415(f)(3)(C) and, second, that this statute of limitations limits the scope of a child's remedy to those injuries that actually occurred in the two years before the filing of a complaint, no matter when the parent reasonably discovered the injury. The obvious problem with the District's first contention is that, as the District Court noted in rejecting it, the language and plain meaning of the subsections are, in fact, quite different: Section 1415(f)(3)(C) provides that parents who have been unable to secure relief for alleged violations through informal channels and are resorting to requesting a due process hearing must do so "within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). Section 1415(b)(6)(B), on the other hand, describes that very same complaint that parents shall have the opportunity to present as "set[ting] forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint." *Id.* § 1415(b)(6)(B).

The District does not attempt to reconcile the language of these provisions; it simply asks us *ipse dixit* to declare them identical and further asks that we read this single statute of limitations to permit relief only for those injuries that occurred no more than two years before the filing of the complaint. The problem is that this is not what the statute says and the District's logic proves an unworkable syllogism: Section 1415(b)(6)(B) makes reference to (a) injuries that

22

occurred no more than two years before (b) the reasonable discovery date; § 1415(f)(3)(C) provides that (b) this reasonable discovery date must be no more than two years before (c) the filing of the complaint; but neither subsection references (a) injuries that occurred no more than two years before (c) the filing of the complaint.

The District's reading not only lacks textual support but affirmatively contravenes the language and purpose of Congress in using a reasonable discovery date. When fashioning a statute of limitations, a legislature may choose as the date from which the limitations period begins to run either the date the injury actually occurred, an approach known as the "occurrence rule," or the date the aggrieved party knew or should have known of the injury, that is, the "discovery rule." *See Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011) (discussing these rules in the context of Pennsylvania tort law); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994) (explaining that the discovery rule provides that the date the statute of limitations begins to run "is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured"). Under the discovery rule, a plaintiff's time to bring suit is not in any way shortened by his or her reasonable ignorance: "the statutory limitations period begins to run and the plaintiff is afforded the full limitations period, starting from the point of [discovery], in which to file his or her claim." *Oshiver*, 38 F.3d at 1386.[10]

---

[10] We have acknowledged there are different views as to whether the discovery rule is properly characterized as delaying the date of claim accrual or as tolling the limitations

The discovery rule controls here. Generally, "absen[t] . . . a contrary directive from Congress, we apply the federal discovery rule" as a default. *Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 209 (3d Cir. 2008) (internal quotation marks omitted). Here, of course, Congress left nothing to doubt, unambiguously providing in the IDEA that the date from which any limitations period begins to run is the date the parents "knew or should have known" of the basis for the claim. *See* 20 U.S.C. §§ 1415(b)(6)(B), (f)(3)(C). The District thus does not argue that the occurrence rule applies, nor could it, because to do so would be contrary to the IDEA's explicit, twice-repeated discovery rule. Instead, it attempts an end run around the rule by proposing a two-year cap on redress from the date of the complaint, with the same effect: the requirement that a claim be filed within two years of the date the violation actually occurred (not the date it was reasonably discovered) for that claim to be cognizable.

Take a practical example. Assume a school district unreasonably fails to identify a child's disability from the beginning of first grade through the end of third grade. Assume also that at the end of third grade, the parents first reasonably discover the injury, and the school district immediately begins providing the student with the

period for a claim that accrued upon occurrence of the injury, and recently have held that the federal discovery rule is properly viewed as the latter. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011). This distinction is immaterial to our resolution here, for "[t]he distinction between the two concepts . . . makes no difference for purposes of deciding whether a claim survives a statute-of-limitations defense." *Id.* at 148.

24

educational supports he or she needs going forward but declines to provide that child with compensatory education to make up for the three years the child was deprived a FAPE. Under the theory espoused by the District, even if the parents filed a due process complaint the very same day they reasonably discovered the injury, the child's compensatory education for the three years of this violation would be capped at two years (the second and third grade years that occurred within the two years before the filing of the complaint). Moreover, those two years of compensatory education would diminish *daily* for each day after the reasonable discovery date that the parents or their counsel conducted due diligence, explored settlement options, or prepared the complaint before filing. Nothing in the plain language of the statute suggests such an absurd result. *Cf. Reiter v. Cooper*, 507 U.S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute.").[11]

---

[11] Perhaps for this reason, at oral argument, the District took another tack, stating that if a parent's complaint was filed "very close in time" to the reasonable discovery date—that is, if a parent only waited a week or two to file a complaint, versus the two years he or she is entitled under the statute—a child would not lose any remedy at all. Oral Arg. at 13:25, *available at* http://www.ca3.uscourts.gov/oral-argument-recordings. This supposed two-week grace period, like the District's position generally, finds no support in the statutory text.

Putting aside the oddity of a statute of limitations functioning in this manner and its inconsistency with the broad remedial purposes of the IDEA (discussed more fully below), the text is clear that Congress eschewed the occurrence rule in favor of the discovery rule by hinging both § 1415(f)(3)(C) and § 1415(b)(6)(B) on the date the parents "knew or should have known" of the injury. *See, e.g.*, *Merck & Co. v. Reynolds*, 559 U.S. 633, 651 (2010) (holding that when a "statute says that the plaintiff's claim accrues only after the 'discovery' of . . . facts," a limitations period does not "begin *before* 'discovery' can take place"); *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir. 1997) ("It is well-established that Pennsylvania law recognizes an exception to the statute of limitations which delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." (internal quotation marks omitted)). Thus, the limitations period of § 1415(f)(3)(C) "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." *Merck & Co.*, 559 U.S. at 653 (internal quotation marks and alteration omitted).[12]

---

[12] The discovery rule, of course, has a practical and "fundamental difference" with general equitable tolling doctrines, *Oshiver*, 38 F.3d at 1390, the concept we considered with regards to the IDEA in *D.K.*, 696 F.3d at 245-47. Specifically, "[t]he purpose of the discovery rule is to determine . . . when the statute of limitations [effectively] begins to run." *Oshiver*, 38 F.3d at 1390. Our general equitable tolling doctrine, on the other hand, "steps in to toll, or stop, the running of the statute of limitations in light of

Accordingly, § 1415(b)(6)(B), which runs backward from the reasonable discovery date (not the filing date), appears on its face to mean something different and, whatever that is, it is not, as the District would have it, that claims not known or reasonably known expire of their own accord if the injury occurred more than two years before the filing date.

### ii. G.L.'s 2+2 and Pleading Requirement Theories

In a diametrically different but no less problematic reading, G.L. argues that the text of § 1415(b)(6)(B) supports two interpretations, each of which entitles him to relief. First, he argues that the District Court's 2+2 approach was correct—that § 1415(b)(6)(B) provides a two-year window before the reasonable discovery date within which he may claim IDEA violations occurred, thus effectively serving as a four-year remedy cap. Second, he argues, along with Amici Appellees,[13] that this subsection is merely the description of a

___

established equitable considerations," despite a plaintiff's discovery of his or her injury. *Id.*

[13] G.L. focused his argument almost exclusively on the 2+2 rule, candidly explaining at oral argument that, because he only alleged two years of violations, the Court's adoption of that rule would give him complete relief. He did, however, also support the broader position urged by Amici Appellees, i.e., that properly construed, neither § 1415(f)(3)(C) nor § 1415(b)(6)(B) imposed a cap on remedies. Even if G.L. had not espoused this interpretation of the statute, we are bound, "on the basis of our independent judgment, [to] exercis[e] a plenary review of the purely legal question[] presented" to us by the parties, pursuant to "our duty to

27

prima facie cause of action, with no limit on remedy at all. That is, § 1415(b)(6)(B) requires that a due process complaint allege an injury under the IDEA that occurred within two years of a parent's reasonable discovery, but imposes no limitation on the remedy if these elements are pleaded and the complaint is timely filed.

Both of these interpretations, however, would render the text illogical. For like § 1415(f)(3)(C), § 1415(b)(6)(B) provides in the very same sentence that if a "State has an explicit time limitation for presenting such a complaint," the complaint shall instead be filed "in such time as the State law allows," rather than the time described in § 1415(b)(6)(B), and further provides that if the state does enact its own statute of limitations, the federal exceptions still apply to the state's statute of limitations. 20 U.S.C. § 1415(b)(6)(B). Yet, it would be nonsensical for Congress to specify that a federal statute's *remedy cap* or *the elements of a prima facie case* be replaced by a state's *statute of limitations*, and it would be equally illogical to have two bases for equitable tolling—a doctrine used to determine whether a statute of limitations has expired—apply to a provision that is not a statute of limitations in the first place. We decline to interpret the

interpret statutory provisions" and accord them the meaning that Congress intended. *Vornado, Inc. v. Trs. of the Retail Store Emps.' Union Local 1262*, 829 F.2d 416, 421 (3d Cir. 1987); *see also Loretangeli v. Critelli*, 853 F.2d 186, 189 n.5 (3d Cir. 1988) ("This court may consider a pure question of law even if not raised below . . . where the issue's resolution is of public importance.").

28

statute in this bizarre fashion. *See, e.g.*, *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 343 (1994) (rejecting statutory interpretation that would render a statute "illogical" and contrary to congressional intent).

In sum, the supposedly straightforward textual arguments of the parties more resemble the twists and bends of a contortion artist, presenting us with the option, on the one hand, of ignoring swaths of the statutory text or, on the other, accepting a reading that is absurd on its face. The parties' positions are illustrative, however, of the difficulty of applying a plain language reading to this text. We conclude, as we observed in addressing the pre-2004 version of the IDEA, "the language of section 1415(b)(6) is at best ambiguous." *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005).[14] We therefore must resort to other tools of statutory construction.

## B. Statutory Interpretation of § 1415(b)(6)(B)

The Supreme Court has instructed that "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *F.D.A. v.*

---

[14] In *Lawrence*, we addressed whether a school district had standing to bring a private right of action under § 1415(b)(6) and concluded the provision was intended to provide a private right of action only to disabled children and their parents. 417 F.3d at 371-72. While the question was wholly unrelated and we were addressing a pre-amendment version of the IDEA, our observation about the opacity of § 1415(b)(6) pertains even more so to the amended version.

29

*Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). That is, "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988); *accord Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59-60 (1987) (analyzing statutory language in a way that is in accord with the "language and structure" of the section of law at issue). Such is the case here, where examining § 1415(b)(6)(B) in the context of § 1415 and the IDEA as a whole points unequivocally in one direction: that § 1415(b)(6)(B) indeed restates § 1415(f)(3)(C)'s two-year statute of limitations and that this limitations period functions in a traditional way, that is, as a filing deadline that runs from the date of reasonable discovery and not as a cap on a child's remedy for timely-filed claims that happen to date back more than two years before the complaint is filed.

### i. The Structure, Language, and Context of the Act

We begin with the overarching structure of § 1415. *See Gwaltney*, 484 U.S. at 59-60; *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 363 (3d Cir. 2015) (examining the "structure and . . . parallels" of a statute to determine the meaning of its terms). As previously noted, after opening with a preamble that reiterates that a state must "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards," 20 U.S.C. § 1415(a), the section next proceeds to list and briefly describe the "[t]ypes of procedures" mandated by the IDEA, *id*. § 1415(b). That listing, in § 1415(b), serves

30

in effect as a table of contents for the expanded descriptions of these same procedures that then appear in roughly the same order in § 1415(c)-(f).  Thus, for example, § 1415(b)(3) requires written prior notice of changes to a child's educational program, the details of which are described in § 1415(c)(1); § 1415(b)(4) ensures notice is available in a parent's native language, as described in § 1415(d)(2); § 1415(b)(5) provides "[a]n opportunity for mediation," as described in § 1415(e); and, as relevant here, § 1415(b)(6) provides an "[a]n opportunity for any party to present a complaint," which is more fully described in § 1415(f).  *Id.* § 1415(b)-(f).  This structure makes clear that § 1415(b) was intended to preview and convey the same essential meaning as § 1415(f).

Given that § 1415(b), in context, appears to be nothing more than a summary listing of the procedural safeguards more fully described in later subsections, we cannot conceive that Congress intended to bury within § 1415(b)(6) a sea change in the IDEA.  That, however, would be the effect of cutting off at twenty four months in virtually all cases the courts' power to award compensatory education, and "le[aving] parents without an adequate remedy when a school district unreasonably fail[s] to identify a child with disabilities."  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009) (noting "Congress' acknowledgment of the paramount importance of properly identifying each child eligible for services").  This proposition appears particularly fanciful considering that Congress failed to even hint at such an intention either in § 1415(f), the full version of the due process hearing procedure of which § 1415(b)(6) is merely a précis, or in § 1415(i), which was reenacted in 2004 without any alteration to the "broad discretion" it grants federal courts

31

to remedy violations of the IDEA, *Forest Grove*, 557 U.S. at 238. As the Supreme Court "ha[s] repeatedly said[,] . . . Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.'" *E.P.A. v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1612 (2014) (Scalia, J., dissenting) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Moreover, it is "[a] standard principle of statutory construction . . . that identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). Here, the words and phrases describing the IDEA's statute of limitations and its exceptions indicate that § 1415(b) was intended to have the same meaning as the other references to a limitations period in § 1415, and, like them, to function as a filing deadline and not a remedy cap. Specifically, in three separate subsections of § 1415, the statute provides a federal time limit, but—using identical language—provides as an alternative: "or, if the State has an explicit time limitation . . . , in such time as the State law allows." 20 U.S.C. §§ 1415(b)(6), (f)(3)(C), (i)(2)(B). Given that state limitations periods generally function as filing deadlines on claims that are known or should have been known, not remedy caps on claims not yet reasonably knowable, the only way those words can be read sensibly is if they provide an alternative to a federal filing deadline, i.e., a traditional statute of limitations.

"Textual cross-reference confirms this conclusion," *Brown v. Gardner*, 513 U.S. 115, 118 (1994), for § 1415(b)(6)(B) not only mirrors § 1415(f)(3)(C)'s state statute of limitations provision but also its two equitable

32

tolling exceptions, and does so simply by cross-referencing the "the exceptions to the timeline described in [§ 1415(f)(3)(D)]," 20 U.S.C. § 1415(b)(6), (f)(3)(C). This shorthand reference to these important tolling provisions, which are then set forth in full in § 1415(f), fortifies our conclusion that § 1415(b)(6) was merely intended as an abstract of § 1415(f), that it reflects the same limitations period as § 1415(f)(3)(C), and that this limitations period, pursuant to the "cooperative federalism" inherent in the IDEA, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (quoting *Little Rock Sch. Dist. v. Mauney*, 183 F.3d 816, 830 (8th Cir. 1999)), defers to state limitations periods when appropriate and otherwise functions as a traditional statute of limitations—not a remedy cap.

Indeed, while it would make no sense for a state filing deadline to displace a federal remedy cap or elements of a prima facie case, it makes perfect sense that Congress, according due weight to principles of federalism, would allow a state filing deadline to displace a federal one. Likewise, it would be odd indeed for § 1415(b)(6)(B), if it actually described a remedy cap or a prima facie case, to apply equitable tolling provisions from § 1415(f)(3)(D), but quite logical if § 1415(b)(6)(B) merely restates the statute of limitations to which those equitable exceptions apply. That is, when we "look to the [section's] surrounding words and provisions and their context," *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004), and apply "the cardinal rule that a statute is to be read as a whole," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), it is clear that § 1415(b)(6)(B),

33

though poorly penned, was intended merely as a synopsis of § 1415(f)(3)(D)'s statute of limitations.[15]

### ii. *Forest Grove* and the Canon against *Sub Silentio* Repeal

Even if the structure, language, and context of the IDEA left room for doubt, we would be loath to interpret § 1415(b)(6)(B) as constricting the remedies available under the IDEA in view of the statute's broad remedial purpose, *see A.W.*, 486 F.3d at 803, codified, among other places, in § 1415(i)(2)(C)(iii). That subsection provides that a court "shall grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), and, in a long line of cases, the Supreme Court and this Circuit have held that it should be interpreted expansively to provide a comprehensive remedy for children deprived of a FAPE. *See, e.g.*, *Forest Grove*, 557 U.S. at 237-38 ("In determining the

---

[15] Given the structure of this statute, which includes at the outset a digest of the multiple procedural safeguards that are each expounded upon in later subsections, we also discern no tension between our interpretation of § 1415(b)(6)(B) and the canon against superfluity. Moreover, that canon "assists only where a competing interpretation gives effect 'to every clause and word of a statute.'" *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2248 (2011) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). We can identify no competing interpretation that could give logical meaning to all the words of § 1415(b)(6)(B), and thus conclude this is a quintessential case where "rigorous application of the canon does not seem a particularly useful guide to a fair construction of the statute." *King*, 135 S. Ct. at 2492.

scope of the relief authorized, . . . the ordinary meaning of these words confers broad discretion on the court and . . . absent any indication to the contrary, what relief is appropriate must be determined in light of the Act's broad purpose of providing children with disabilities a FAPE . . . ." (internal quotation marks omitted)); *Bucks Cnty. Dep't of Mental Health*, 379 F.3d at 67 ("We . . . have broadly interpreted the term 'appropriate'" and "discerned nothing in the text or history suggesting that relief under IDEA is limited *in any way*. . . ." (emphasis added) (internal quotation marks and alterations omitted)); *see also D.E.*, 765 F.3d at 273 (examining the IDEA's purpose and rejecting a statutory interpretation which "would 'create an enormous loophole' in a school district's obligations under the IDEA, while 'substantially weaken[ing] the IDEA's protections' for students" (alteration in original) (quoting *D.F.*, 694 F.3d at 497)).

Given the broad remedial scheme of the IDEA, neither in the period before the 2004 amendments—when we borrowed a state's most analogous statutory cause of action to determine how long after an adverse decision by a hearing officer a parent could wait before filing an IDEA complaint in state or federal court[16]—nor in the period since, have we imposed a cap on the remedy a child could seek for timely-filed claims. Instead, we have consistently repeated that a

[16] *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 250-51 (3d Cir. 1999); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 270 (3d Cir. 2014) (observing that "[p]rior to the [2004] amendment of the IDEA . . . , the time for bringing suit . . . after receiving an adverse administrative determination had been two years").

35

child's right to compensatory education "accrue[s] from the point that the school district knows or should know" of the injury to the child, and the child "is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *M.C. ex rel. J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 396-97 (3d Cir. 1996); *see also D.F.*, 694 F.3d at 499 (repeating standard); *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 249 (3d Cir. 2009) (same); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) (same). That standard is grounded in our understanding, then and now, that "a child's entitlement to special education should not depend upon the vigilance of the parents (who may not be sufficiently sophisticated to comprehend the problem) nor be abridged because the district's behavior did not rise to the level of slothfulness or bad faith." *M.C.*, 81 F.3d at 397.

Against the backdrop of these cases and the broad interpretation the Supreme Court has given to a court's remedial power under § 1415(i)(2)(C)(iii), it bears particular significance that Congress reenacted that subsection without change as part of the 2004 reenactment. Thus, interpreting the IDEA's statute of limitations as a remedy cap would also disregard the well-settled canon of statutory interpretation that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580 (1978); *see also Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2520 (2015).

On this point, we find clear guidance in the Supreme Court's decision in *Forest Grove*, which examined the 1997

amendments to the IDEA. Those amendments added, among other things, § 1412(a)(10)(C), which provided that if the parents of a special-needs child "who previously received special education and related services under the authority of a public agency" enrolled their child in private school without the consent or referral of that public agency, a school district could still be ordered to provide tuition reimbursement if a fact-finder determined that the school district failed to provide a student with a FAPE in the first instance. 20 U.S.C. § 1412(a)(10)(C)(ii). In an attempt to limit liability, a school district argued that because the IDEA "only discusses reimbursement for children who have previously received special-education services through the public school, [the] IDEA only authorizes reimbursement in that circumstance." 557 U.S. at 241.

The Supreme Court disagreed. It observed that the 1997 amendments preserved the IDEA's comprehensive remedial goal of providing every child with a FAPE and did not alter 20 U.S.C. § 1415(i)(2)(C)(iii). *See id.* at 243 n.10 (stating that the holdings in *School Committee of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359 (1985), and *Florence County School District Four v. Carter*, 510 U.S. 7 (1993), "rested . . . on the breadth of the authority conferred by § 1415(i)(2)(C)(iii), the interest in providing relief consistent with the Act's purpose, and the injustice that a contrary reading would produce—considerations that were not altered by the 1997 Amendments" (internal citations omitted)). The Court thus rejected the notion that Congress repealed *sub silentio* those previous Supreme Court holdings describing the "broad discretion" afforded by § 1415(i)(2)(C)(iii). *Id.* at 243. Any other reading, the Court reasoned, would be contrary to the IDEA's broad remedial

37

purpose and a "child's right to a *free* appropriate education . . . would be less than complete." *Id.* at 244-45 (alteration in original) (quoting *Burlington*, 471 U.S. at 370).

So too here, for the 2004 reauthorization reaffirmed the IDEA's first purpose as "ensur[ing] that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs," 20 U.S.C. § 1400(d)(1)(A), and once more left unchanged § 1415(i)(2)(C)(iii), which grants courts the broad discretion to fashion remedies that accomplish that objective. Congress's purpose in that mandate is clear: In order to effectuate the law's broad remedial goals, a court finding a deprivation of a free appropriate public education should return a child to the educational path he or she would have traveled had the educational agency provided that child with an appropriate education in the first place. *See D.F.*, 694 F.3d at 498-99; *Reid*, 401 F.3d at 518; *see also Ridgewood*, 172 F.3d at 251 (remanding to district court to consider eight years of claims for compensatory education); *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 873-74 (3d Cir. 1990) (affirming grant of thirty months of compensatory education).

Consistent with that purpose and the traditional way in which a discovery-based statute of limitations functions, courts since the passage of the 2004 reenactment have routinely affirmed awards of compensatory education that remedy deprivations of greater than two years, or at minimum, remanded for an administrative agency to consider those claims. *See Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 715 (3d Cir. 2010) (affirming award of three years of compensatory education); *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.,* 553 F.3d 315, 324 (4th Cir. 2009) (holding that the broad discretion afforded under the IDEA allowed a

38

district court to consider reimbursement for three years of a child's allegedly inappropriate placement); *Draper v. Atl. Indep. Sch. Sys.*, 518 F.3d 1275, 1286-90 (11th Cir. 2008) (rejecting a school district's argument that a child's long-undiscovered injury was time barred and upholding an award of approximately five years of compensatory education); *Reid*, 401 F.3d at 526 (remanding to consider claims over a four and half year period of time); *K.H. v N.Y.C. Dep't of Educ.*, No. 12-1680, 2014 WL 3866430, at \*20 (E.D.N.Y. Aug. 6, 2014) (finding that "the IDEA's clear statutory language mandates" that a remedy is not limited by the statute of limitations when a claim is timely filed); *Jefferson Cnty. Bd. of Educ. v. Lolita S.*, 977 F. Supp. 2d 1091, 1123 (N.D. Ala. 2013) (holding that a right to redress for a complaint filed in October 2011 would be limited to the most recent two years "*unless* . . . the statute did not begin to run on the claim because the parent did not know/should not have known about that action until a time within two years of the due process request"). *But see Indep. Sch. Dist. No. 413, Marshall v. H.M.J.*, No. 14-2114, 2015 WL 4744505, at \*11 (D. Minn. Aug. 11, 2015) ("No party may recover for a violation occurring outside the two-year statute of limitations.").

Of course, the IDEA's statute of limitations does still practically curtail remedy, for it "specif[ies] when a [complaint] is timely filed" and thus "has the consequence of limiting liability because filing a timely [complaint] is a prerequisite to having an actionable claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). In context, however, that means simply that once a violation is reasonably discovered by the parent, any claim for that violation, however far back it dates, must be filed within two

years of the "knew or should have known" date. If it is not, all but the most recent two years before the filing of the complaint will be time-barred; but if it is timely filed, then, upon a finding of liability, the entire period of the violation should be remedied. In other words, § 1415(f)(3)(C), like its synopsis in § 1415(b)(6)(B), reflects a traditional statute of limitations.

### iii. The Department of Education's Regulation and Interpretation

The DOE, the federal agency charged with promulgating regulations for the IDEA, *see* 20 U.S.C. § 1406, agrees that § 1415(b)(6)(B) and § 1415(f)(3)(C) state the same limitations period.

In its regulations following the 2004 reenactment, the DOE simply reproduced both subsections verbatim. *Compare* 20 U.S.C. § 1415(b)(6)(B), *and* 1415(f)(3)(C), *with* 34 C.F.R. §§ 300.507(a)(2), *and* 300.511(e). In its Analysis of Comments and Changes to those regulations, however, the DOE reported that commenters were confused and sought guidance, "because the statute of limitations is mentioned twice and implies that the timeline for filing a complaint and filing a request for a due process hearing are different." Assistance to States for the Education of Children with Disabilities & Preschool Grants for Children with Disabilities, 71 Fed. Reg. 46,540, 46,706 (Aug. 14, 2006). It responded that "[t]he statute of limitations in section [1415(b)(6)(B)] of the Act is the same as the statute of limitations in section [1415(f)(3)(C)] of the Act." *Id.*

In this appeal, at our request, the DOE also submitted an amicus letter brief in which it reiterated its position that the

subsections are, in fact, referencing a single statute of limitations.[17]

We afford the DOE's interpretation of its regulation and its position before us here "'respect' . . . to the extent it has the 'power to persuade,'" *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see id.* at 256-57 (holding that an agency's interpretation of regulations that merely parrot the statute are accorded *Skidmore* deference, rather than the higher deference generally accorded to interpretive guidance under *Auer v. Robbins*, 519 U.S. 452 (1997)). Here, we find the DOE's position persuasive because it accords with the language, structure and purpose of the statute, and it is yet one more voice in a harmonious chorus that § 1415(b)(6)(B) was intended to reiterate § 1415(f)(3)(C)'s two-year statute of limitations.

---

[17] The IDEA also tasks the DOE with promulgating a model notice of procedural safeguards. 20 U.S.C. § 1417(e). In that model notice, it again repeated the language of § 1415(b)(6), but cautioned states that if they "established a specific timeframe for requesting a hearing under the IDEA that is different than two years (either shorter or longer), revise the above statement to reflect that timeframe." United States Department of Education, Part B Procedural Safeguards Notice, 17 (2009), http://www2.ed.gov/policy/speced/guid/idea/modelform-safeguards.doc. Again, such a caution to revise the limitations notice shorter or longer based on a state's statute of limitations only makes sense if § 1415(b)(6)(B) is, in fact, a statute of limitations.

To the extent there remains any doubt about this conclusion, it is put to rest by the legislative history, to which we next turn.

### iv. The Legislative History of the 2004 IDEA Amendments

"Supreme Court cases declaring that clear language cannot be overcome by contrary legislative history are legion." *First Merchs. Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 402 (3d Cir. 1999) (collecting cases). That said, legislative history can play a confirmatory role in resolving ambiguity when statutory language and structure support a given interpretation. *See, e.g.*, *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 586-91 (2004); *Catwell v. Att'y Gen.*, 623 F.3d 199, 208 (3d Cir. 2010). This is such a case.

A legislature designing a statute of limitations confronts certain choices. As we have discussed, it can set the date from which the limitations period begins to run by using the occurrence rule or the discovery rule. *See supra* at 23-26. It also can set the expiration date either by counting forward from that occurrence or discovery date to the filing of a complaint or by counting backward from the date a complaint is filed to the occurrence or discovery date.

When the House of Representatives proposed the amendment that was eventually incorporated into § 1415(b)(6), it chose to use the occurrence rule and to count backward, providing that parents would have:

(6) an opportunity to present complaints–

(A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and

(B) which set forth a violation that occurred not more than one year before the complaint is filed;

H.R. Rep. 108-77, at 254 (2003). The House committee's report unambiguously described this language as a one-year statute of limitations. *Id.* at 115-16 ("Statute of limitations[:] The Act currently has no statute of limitations and leaves local educational agencies open to litigation for the entire length of time a child is in school, whether or not the child has been identified as a child with a disability. . . . The bill includes a statute of limitations of one year from the date of the violation . . . ."). And as written, it would have unambiguously functioned like one, barring claims based on injuries that occurred more than twelve months before the complaint was filed.

The Senate, meanwhile, chose to use the discovery rule and to count forward, providing in what became § 1415(f)(3)(C):

Timeline for requesting hearing.–A parent or public agency shall request an impartial due process hearing within 2 years of the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a

43

hearing under this part, in such time as the State law allows.

S. Rep. 108-185, at 222 (2003). Unlike the House's proposal, the Senate's also added the provision giving primacy to a state's limitations period, along with the two statutory tolling exceptions.

Those two bills—both statutes of limitations but pointing in different directions and using different starting dates for the limitations period—then went to conference where the conference committee sought to reconcile them. That committee reaffirmed that each body's amendment functioned as a traditional statute of limitations on the filing of a complaint:

> The House bill and Senate amendment have similar language regarding the opportunity to present complaints, but the House bill, not the Senate amendment, includes language establishing a 1 year statute of limitations on the right to present complaints. Senate has a 2 year timeline for filing complaints at note 221.

H.R. Rep. 108-779, at 213 n.193 (2004) (Conf. Rep.), *reprinted in* 2004 U.S.C.C.A.N. 2480, 2527; *see also id.* at 218 n.221, 2532 ("The Senate amendment establishes a 2-year statute of limitations unless State law already has a statute of limitations. The House bill includes a 1-year statute of limitations (see note 193).").

Apparently concluding that the addition of a statute of limitations should involve both a new provision within § 1415(f)(3)(C) and an amendment to its prefatory subsection

44

at § 1415(b)(6), the conference committee opted not to choose one body's addition over the other but to retain both. It did so by conforming each and every of the material terms of the House's version to the Senate's, i.e., by changing the House's limitations period from one year to two, changing the occurrence rule to the discovery rule, adding that a state's statute of limitations could override the IDEA's, and adding the two equitable tolling provisions specified by the Senate. The conference committee then incorporated the Senate's version at § 1415(f) and the House's version in the summary listing at § 1415(b). When it did so, however, it omitted to change the backward-looking framework of the House's version to the forward-looking framework of the Senate's. Thus was created the problem we grapple with today.

Section 1415(b)(6), in other words, started in the House as a functioning, one-year statute of limitations for the filing of complaints:

> (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and

> (B) which set forth a violation that **occurred not more than one year before the complaint is filed**[.]

H.R. Rep. 108-77, at 254 (emphasis added).

It ended, however, as something different altogether:

> (A) with respect to any matter relating to the identification, evaluation, or educational

45

placement of the child, or the provision of a free appropriate public education to such child; and

(B) which set forth an alleged violation that **occurred not more than two years before the date the parent or public agency knew or should have known** about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.

20 U.S.C. § 1415(b)(6) (emphasis added).

The Congressional Research Service described the amendments this way:

The 2004 reauthorization includes statutes of limitations in various sections. **As previously discussed [Section 1415(b)] provides for a two-year statute of limitations regarding the filing of a complaint**. There is also a two-year statute of limitations regarding requests for a hearing. The two years is from the date the parent or agency knew or should have known about the alleged action.

Richard N. Appling and Nancy Lee Jones, Cong. Research Serv., RL32716, Individuals with Disabilities Education Act (IDEA): Analysis of Changes Made by P.L. 108-446, CRS-27 (2005) (emphasis added). While this post-enactment

observation on its own carries little weight, nothing in the IDEA's legislative history points to a contrary interpretation.

In fact, quite the opposite. Far from Congress intending that the two limitations periods diverge or limit a court's remedial power under § 1415(i), the legislative history reflects that the drafters intended the amendments to add a single statute of limitations and to leave untouched the IDEA's broad remedies. For example, in its explanation of the addition of the statute of limitations, the Senate report stated:

> This new provision is not intended to alter the principle under IDEA that children may receive compensatory education services, as affirmed in *School Comm. of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359 (1985) and *Florence County School District Four v. Carter*, 510 U.S. 7 (1993) and otherwise limited under section [1412(a)(10)(C)] . . . . In essence, where the issue giving rise to the claim is more than two years old and not ongoing, the claim is barred; **where the conduct or services at issue are ongoing to the previous two years, the claim for compensatory education services may be made on the basis of the most recent conduct or services and the conduct or services that were more than two years old at the time of due process or the private placement** . . . .

S. Rep. 108-185, 40 (emphasis added).

After conference, but before final passage, Senator Harkin, a co-sponsor of the amendments, addressed the addition of a statute of limitations this way:

> In this reauthorization, we also include a 2-year statute of limitations on claims. However, it should be noted that this limitation is not designed to have any impact on the ability of a child to receive compensatory damages for the entire period in which he or she has been deprived of services. **The statute of limitations goes only to the filing of the complaint, not the crafting of remedy.** This is important because it is only fair that if a school district repeatedly failed to provide services to a child, they should be required to provide compensatory services to rectify this problem and help the child achieve despite the school's failings.
>
> **Therefore, compensatory education must cover the entire period and must belatedly provide all education and related services previously denied and needed to make the child whole.**

150 Cong. Rec. S11851 (daily ed. Nov. 24, 2004) (statement of Sen. Tom Harkin) (emphasis added); *see also Robert R. v. Marple Newtown Sch. Dist.*, No. 05-1282, 2005 WL 3003033, at *4 (E.D. Pa. Nov. 8, 2005) (examining the IDEA's legislative history and concluding that "the limitations period placed on claims for compensatory education by the [2004] amendment to the IDEA was not meant to limit the period which the hearing officer could consider when a due process

48

hearing was timely brought"); Jennifer Rosen Valverde, *A Poor IDEA: Statute of Limitations Decisions Cement Second-Class Remedial Scheme for Low-Income Children with Disabilities in the Third Circuit*, 41 Fordham Urb. L.J. 599, 643-646 (2013). The legislative history is thus crystal clear that Congress intended to impose a single statute of limitations, but otherwise not to limit a court's power to remedy the deprivation of a free appropriate education.

## V. Conclusion

As a general rule, "[t]he plain meaning of legislation should be conclusive." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). However, in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," the plain meaning need not control. *Id.* (alteration in original) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). In those exceptional instances where "it is uncontested that legislative intent is at odds with the literal terms of the statute, . . . [our] primary role is to effectuate the intent of Congress even if a word in the statute instructs otherwise." *Morgan v. Gay*, 466 F.3d 276, 278 (3d Cir. 2006); *accord Thorpe v. Borough of Thorpe*, 770 F.3d 255, 263 (3d Cir. 2014).

Here, the language, context, and structure of § 1415 lead inexorably to one conclusion: § 1415(b)(6)(B) was intended to reflect the same statute of limitations set forth in § 1415(f)(3)(C). To the extent that some of its language appears to conflict with that conclusion, the legislative history confirms what is apparent from our analysis of the statute itself. That is, the inconsistent language reflects nothing more than a drafting error in the reconciliation process, turning a

49

passage that was at each stage of the legislative process thought to be a statute of limitations into something that both contravenes congressional intent and renders the statute illogical. Thus, the IDEA "needs common sense revision," *Morgan*, 466 F.3d at 279, reflecting congressional intent that a due process complaint must be presented "within 2 years" of a parent's reasonable discovery date, not that remedies be limited to injuries that occurred "not more than 2 years before" that date.

The upshot of all this is two-fold. On the one hand, although a child's right to special education under the IDEA does not turn on parental vigilance, *M.C.*, 81 F.3d at 397, parental vigilance is vital to the preservation and enforcement of that right. As we made clear in *D.K.*, claims that *are* known or reasonably should be known to parents must be brought within two years of that "knew or should have known" date, and parents may not, without satisfying one of the two statutory exceptions, knowingly sit on their rights or attempt to sweep both timely and expired claims into a single "continuing violation" claim brought years later. 696 F.3d at 248. Parents are often in a position to be forceful advocates for their children and through their vigilance and perseverance to help fulfill the IDEA's promise of a free appropriate public education. That "cooperative process . . . between parents and schools" that results from a parent's action, after all, is at the very "core of the statute" itself. *Schaffer*, 546 U.S. at 53. Thus the sooner parents start that process and secure appropriate intervention and remedial supports after they discover or reasonably should have discovered the need for it, the better for the well-being of the child, the goals of the school district, and the relationship between the family and school administrators.

On the other hand, where parents neither knew nor reasonably should have known of the special needs of their child or of the educational system's failure to respond appropriately to those needs, the other partner in this endeavor—the school district itself—still has its independent duty to identify those needs within a reasonable time period and to work with the parents and the IEP team to expeditiously design and implement an appropriate program of remedial support. 20 U.S.C. § 1412(a)(3); *see also Forest Grove*, 557 U.S. at 245; *P.P.*, 585 F.3d at 738. This is a profound responsibility, with the power to change the trajectory of a child's life. Thus, the corollary to *D.K.* is that when a school district has failed in that responsibility and parents *have* taken appropriate and timely action under the IDEA, then that child is entitled to be made whole with nothing less than a "complete" remedy. *Forest Grove*, 557 U.S. at 244. Compensatory education is crucial to achieve that goal, and the courts, in the exercise of their broad discretion, may award it to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation. *See D.F.*, 694 F.3d at 498-99. In this way, the courts too have an essential function in fulfilling Congress's mandate in the IDEA and enabling each child with special needs to reach his or her full potential.

For these reasons, we hold today that, absent one of the two statutory exceptions found in § 1415(f)(3)(D), parents have two years from the date they knew or should have known of the violation to request a due process hearing through the filing of an administrative complaint and that, assuming parents timely file that complaint and liability is proven, Congress did not abrogate our longstanding precedent

that "a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *D.F.*, 694 F.3d at 499 (quoting *M.C.*, 81 F.3d at 397).

\* \* \*

G.L.'s claim was filed within two years of the date his parents knew or reasonably should have known of his injury, and thus his right to compensatory education upon proof of a violation was not curtailed by the IDEA's statute of limitations. Accordingly, we will affirm the District Court's decision that his claims for remedy prior to March 2010 were not time-barred and will remand to the District Court for proceedings consistent with this Opinion.