NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-2246

EILEEN ESPOSITO; LOUIS ESPOSITO; KYLE MATULLO,
Appellants

v.

RIDGEFIELD PARK BOARD OF EDUCATION

(Amended per Clerk Order dated 07/08/2020)

On Appeal from the
United States District Court for the District of New Jersey
(No: 2-19-cv-01221)
The Honorable John Michael Vazquez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 18, 2021

Before: SHWARTZ, MATEY, *Circuit Judges*, and TRAXLER*, *Senior Judge*

(Opinion filed: May 18, 2021)

OPINION**

---

* Honorable William B. Traxler, Jr., Senior Judge, United States Court of Appeals for the Fourth Circuit, sitting by designation.
** This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

As a student, K.M. received services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* His aunt and uncle, Eileen and Louis Esposito, filed a due process petition with the New Jersey Office of Administrative Law ("NJOAL") on his behalf, alleging that the Ridgefield Park Board of Education ("Board") denied K.M. his rights under the IDEA. Finding no error in the District Court's conclusion granting the Board's motion for summary judgment, we will affirm.

## I. BACKGROUND

K.M. entered the second grade in 2005 with a language disorder. Following an assessment, the Board approved K.M. for services under the IDEA. Working together, the Board and M.M., K.M.'s mother, developed an individualized education program ("IEP") for K.M. for the rest of the 2005–2006 school year.[1] That collaboration continued for the next decade, through K.M.'s senior year of high school.[2]

M.M. waived reevaluations of K.M. in 2008 and 2012.[3] Then, in 2015, K.M. and M.M. met with school officials to develop an IEP for his final school year. The proposed IEP provided for daily individualized language arts instruction, periodic speech-language consultation, and counseling twice a month. M.M. consented to the IEP and additional

---

[1] An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised" in accordance with requirements set forth in 20 U.S.C. § 1414(d). 20 U.S.C. § 1401(14).

[2] The Board also drafted an IEP for K.M. for a post-graduate year in another school district, but that plan is not at issue in this appeal.

[3] Under the IDEA, eligible children require reevaluation at least once every three years "unless the parent and the local educational agency agree that a reevaluation is unnecessary." 20 U.S.C. § 1414(a)(2)(A), (B)(ii).

psychological and education assessments to assist with K.M.'s post-graduation transition planning. Unexpectedly, those tests showed a precipitous drop in K.M.'s intellectual abilities, with K.M. in the "Borderline Range of Cognitive Ability," and an IQ score of 76 (5th percentile), far below his 2005 test results (35th percentile). (App. at 511.) Still, the Board did not change the 2015–16 IEP.

Soon after, the Espositos took over K.M.'s educational planning and requested more testing.[4] They also retained a speech and language expert, Dr. Jeanne Tighe, and a neuropsychology expert, Dr. Daniel DaSilva, who concluded that K.M. was dyslexic and that he had "low engagement and experience with literacy." (App. at 532).

In 2017, after K.M. completed school, the Espositos filed a due process petition with the NJOAL under the IDEA alleging the school denied K.M. a free appropriate public education ("FAPE") from 2005 through 2016. *See* 20 U.S.C. § 1415(f)(1)(A), (g). The Administrative Law Judge ("ALJ") found the petition timely, because K.M. knew or reasonably should have known ("KOSHK") of the alleged IDEA violation in 2015, and filed his due process petition within the two-year limitations period under 20 U.S.C. § 1415(f)(3)(C). The ALJ limited the remedial period to the 2015–16 school year, also finding the Board knew or reasonably should have known of the injury no earlier than 2015. After a hearing, the ALJ found K.M. had received a FAPE in 2015–16 and dismissed the Espositos' petition.

---

[4] M.M. passed away in March 2016. In May 2016, K.M. gave Ms. Esposito authority to make educational decisions on his behalf.

K.M.[5] then appealed to the District Court.[6] The parties cross-moved for summary judgment on the administrative record, and the District Court ruled for the Board. *E.E. v. Ridgefield Park Bd. of Educ.*, No. 19-1221, 2020 WL 3097473, at *1 (D.N.J. June 11, 2020). The District Court concluded K.M.'s pre-2015 claims were time-barred, *id.* at *5, and found no clear error in the ALJ's conclusion that the Board provided K.M. a FAPE in 2015–16, *id.* at *7. The District Court also granted the Board's motion for summary judgment on the ADA and Section 504 claims, and declined to exercise supplemental jurisdiction over K.M.'s state law claim. *Id.* at *8–9. K.M. timely appealed.[7]

## II. STANDARD OF REVIEW

We review the District Court's grant of summary judgment de novo and may affirm on any grounds supported by the record. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). We apply a "modified de novo" standard of review, *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012), giving "due weight" to the ALJ's fact-findings, including whether the school fulfilled its FAPE obligations, reviewing for clear error, *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012). Credibility determinations based

---

[5] For ease of reference and consistent with the parties' briefing, we will refer to actions taken by K.M. to include actions taken on his behalf by his mother M.M. or the Espositos.

[6] K.M. added claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*; and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:1-2.

[7] The District Court had jurisdiction to review the ALJ's dismissal of K.M.'s IDEA petition under 20 U.S.C. § 1415(i)(3)(A), and over K.M.'s other federal claims under 28 U.S.C. §§ 1331 and 1343. The District Court also had supplemental jurisdiction over the NJLAD claim under 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291. K.M. does not appeal the dismissal of his Section 504 claim.

4

on live testimony are "due special weight," *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010), and we accept those conclusions absent contrary non-testimonial, extrinsic evidence, *D.K.*, 696 F.3d at 243.

We review the IDEA statute of limitations de novo. *Id.* (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009)).

### III. DISCUSSION

### A.      The ALJ Properly Limited the Potential Remedy to the 2015-16 School Year

The IDEA requires due process petitions to be filed "within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). If a claim is timely filed, the child is entitled to "compensatory education for a period equal to the period of deprivation," which accrues "from the point that *the school district* knows or should know of the injury to the child[.]" *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 618–19 (3d Cir. 2015) (emphasis added) (internal quotation marks and citation omitted).

The ALJ determined the due process petition was timely filed in April 2017 because K.M. knew or should have known of the Board's failure to provide an appropriate education on July 1, 2015, the date of the testing that showed the decline in K.M.'s abilities. The ALJ found, however, that July 1, 2015 was also the date *the Board* knew or should have known K.M. may not be receiving an appropriate education. The ALJ therefore concluded that K.M. was not entitled to recover compensatory-education damages for any school year prior to 2015-16.

5

K.M. challenges the latter conclusion and argues that, having timely filed his petition within two years of his KOSHK date, he is entitled to "compensatory education for a period equal to the period of deprivation." *G.L*, 802 F.3d at 626. In other words, his entire academic career at Ridgefield Park from 2005 through 2016. We disagree.

The ALJ did not clearly err in finding the Board did not know, and could not have reasonably known, of potential IDEA violations until the July 2015 reevaluation.[8] Between 2005 and 2015, K.M. and the Board had reason to believe K.M. was making sufficient progress in school. Further, as noted, K.M. was never tested between 2005 and 2015 because M.M. knowingly waived reevaluations in 2008 and 2012. K.M. does not identify evidence suggesting the Board should have otherwise discovered potential problems prior to the July 2015 tests. The ALJ thus properly limited K.M.'s potential remedy to the 2015-16 academic year.[9]

---

[8] The District Court did not discuss the Board's KOSHK date. The District Court instead found that K.M. did not timely file claims arising from school years prior to 2015-16. *E.E.*, 2020 WL 3097473, at *5. The ALJ did not err in determining that K.M. timely filed claims that may enable him to seek compensatory education for the entire period of the alleged deprivation. *See D.K.*, 696 F.3d at 243. But because the record supports the ALJ's finding that the Board knew or should have known of potential injury as of July 1, 2015, we affirm on that basis. *Blunt*, 767 F.3d at 265 (noting that we can affirm summary judgment on any ground supported by the record).

[9] For the same reasons, K.M.'s pre-2015 ADA claim is time-barred. The ADA does not have its own limitations period, so we "borrow a limitations period from an analogous federal law where that law 'clearly provides a closer analogy than the available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *P.P.*, 585 F.3d at 735 (quoting *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 172 (1983)). We have held that "virtually identical claims" brought under the IDEA and Section 504 of the Rehabilitation Act are subject to the same time limitations. *Id.* at 736. Applying this consideration to K.M.'s ADA claim, which hinges on his IDEA claim, warrants application of the IDEA's limitations rules.

**B.      K.M. Is Not Entitled to Relief for the 2015–16 School Year**

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988, 999 (2017).[10] When evaluating an IEP, courts cannot "substitute their own notions of sound educational policy" for that of school authorities. *Id.* at 1001. The question is not whether the IEP is "ideal"; it need only be "*reasonable.*" *Id.* at 999 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206–07 (1982)).

Applying that standard, the District Court did not err in denying K.M.'s 2015–16 claims. The ALJ's decision turns on its finding, undisturbed by the District Court, that the Board's witnesses were persuasive and reliable while K.M.'s witnesses were underwhelming and unpersuasive. We must afford "special weight" to this determination. *D.S.*, 602 F.3d at 564. K.M. argues that when the fact-finder gives greater weight to the school's witnesses because of their proximity to the student, as the ALJ did here, it violates the student's statutory right to benefit from an "independent educational evaluation" at his due process hearing. *See* 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1). The Supreme Court has made clear, however, that the IDEA gives parents the "firepower" to match schools with procedural safeguards, and nothing more. *Schaffer v. Weast*, 546 U.S. 49, 59–61 (2005) ("Congress appears to have presumed . . . that [] if the Act's procedural

---

[10] And "[o]ur precedents already accord with the Supreme Court's guidance in *Endrew F.*, so we continue to apply them." *K.D. by & through Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 251 (3d Cir. 2018).

requirements are respected, parents will prevail when they have legitimate grievances.").

K.M. received the benefit of those protections. The ALJ analyzed K.M.'s expert reports, heard their testimony, and was unpersuaded. The IDEA does not give the student expert's testimony particular weight, nor did *Schaffer* create such a substantive rule.

And while school districts may have an advantage in IDEA litigation because of their first-hand knowledge, the student's independent experts benefit from second-guessing educational choices with clearer hindsight. That is why the IEP's reasonableness is measured at implementation. *See K.D. by & through Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 255 (3d Cir. 2018) ("We may not rely on hindsight to second-guess an educational program that was reasonable at the time.").[11]

And based on that evidence, the ALJ's decision is not clearly erroneous. In 2015–16, K.M. attended general education courses except for special instruction in language arts. The ALJ credited the summaries from K.M.'s general education teachers about K.M.'s progress and graduation readiness. *K.D.*, 904 F.3d at 255 ("As *Endrew F.* explained, 'for a child fully integrated in the regular classroom, an IEP typically should . . . be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.'" (quoting 137 S. Ct. at 999) (omission in original)). Likewise, the ALJ accepted Dr. Puchalik's testimony that the 2015–16 IEP did not require alteration after the 2015 tests

---

[11] We disagree with K.M. that the Board's experts lacked firsthand knowledge so that the ALJ and District Court's reliance on such "inadmissible net opinions" was legal error. (Opening Br. at 44–47.) The District Court correctly observed that the ALJ found the Board's experts had an adequate factual foundation to testify about K.M.'s 2015–16 school year. *E.E.*, 2020 WL 3097473, at *6–8.

because the 2005 test was unreliable. Dr. Puchalik's findings suggest K.M.'s 2015 IQ score was a more reliable indicator of K.M.'s baseline potential than his 2005 measurements, and thus did not compel adjustment of the 2015–16 IEP.

Finally, the ALJ identified significant flaws with K.M.'s rebuttal evidence including the IEP measurements used by K.M.'s experts, and their failure to tie the deficiencies they discovered during their 2017 evaluations to the Board's 2015–16 IEP.

We find no clear error in the findings of the ALJ or District Court that the Board provided K.M. a FAPE in 2015–16.[12]

## IV. CONCLUSION

For these reasons, we will affirm the District Court's grant of summary judgment for the Board and dismissal of K.M.'s federal claims, and will affirm the District Court's dismissal of K.M.'s state law claims for lack of subject matter jurisdiction.[13]

---

[12] Because we find that K.M.'s ADA claim "simply repackage[s] . . . the IDEA claim," we conclude "the District Court properly rejected these claims when it rejected the IDEA claim." *K.D.*, 904 F.3d at 256.

[13] "[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court." *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990). Having properly dismissed K.M.'s federal claims, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over K.M.'s NJLAD claims. *E.E.*, 2020 WL 3097473, at *9 (citing 28 U.S.C. § 1367(c)(3)); *see also Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 112 (3d Cir. 2015).